[Civ. No. 5019.   Third Appellate District.—October 23, 1933.]

A. E. MORTON, Petitioner, v. LUCY A. RICHARDS, as County Auditor, etc., Respondent.

Coyle E. Bybee for Petitioner.

Bond & Price and George F. Jones for Respondent.

PLUMMER, J.—By this proceeding the petitioner seeks a writ of mandate against respondent in behalf of himself, directing the payment of his salary as assessor of the county of Butte, at the rate of $300 per month. Also, a like writ directing the payment of the salary of his chief deputy at the rate of $160 per month; and also, of the salary of his chief clerk at the rate of $125 per month.

It appears from the record that the petitioner was duly elected the assessor of the county of Butte, on August 26, 1930, and qualified as such assessor on January 5, 1931. At the date of the election and qualification of the petitioner as such assessor the salary attached to the office was the sum of $3,600 per annum, payable in monthly installments of $300 each.

The respondent Lucy A. Richards is the duly elected, qualified and acting auditor of the county of Butte. The monthly payments involved herein are for the month of August, 1933, the respondent refusing to draw warrants for a sum other than based upon charter amendments hereafter to be considered.

On the twenty-seventh day of June, 1933, there was submitted to the voters of Butte County certain charter amendments known as propositions 1, 2, 3, 7 and 14. Proposition number 1 amended section 3 of article III, so far as involved in this action, to read as follows: "The Assessor shall be allowed the sum of $2500.00 per annum for clerk's fees, and $6000.00 per annum for deputies' salaries." Proposition No. 7 amended section 6 of article IV to read: "The annual salary of county officers shall be as follows: payable monthly on the first Monday of each month until changed as in this charter provided." (Then follows a schedule of payments,

including subdivision "E", reading as follows: "The assessor, $3000.00 per annum." Proposition No. 14 amended section 2 of article XII to read: "The compensation of any elective or appointive county or township officer shall not be increased or decreased during the term for which he was elected or appointed." Prior to amendment, section 2 read: "The compensation of any elective or appointive county or township officer shall not be increased or decreased during the term for which he was elected nor within six months preceding his election." The amendment to the charter included appointive officers as well as elective officers within the terms of the section. Prior to the amendment to the charter approved by the voters on June 27, 1933, subdivision "E" of section 6 of article IV of the county charter, fixing salaries, read: "The Assessor, $3600.00 per annum."

Two questions are presented for consideration: 1. What is the effect of amending section 3 of article III of the county charter attempting to regulate the compensation of assistants, deputies and clerks? 2. The effect of amending subdivision "E" of section 6 of article IV of the charter reducing the salaries of the county assessor.

■ Section 7½ of article XI of the Constitution particularly specifies in different subdivisions thereof the powers that may be exercised by counties in adopting charters. Subdivision 2 authorizes the insertion in the charter of the salaries that shall or may be paid to sheriffs, county clerks, treasurers, recorders, license collectors, tax collectors, public administrators, coroners, surveyors, district attorneys, auditors, assessors and superintendents of schools. The section further provides that the compensation may be authorized to be fixed by the board of supervisors. Nothing appears in this subdivision providing for setting forth in the charter the compensation or salaries to be paid to assistants, deputies, clerks, attaches or other persons employed from time to time. The provision covering the compensation of assistants, deputies, etc., is set forth in subdivision 5, and reads as follows: "For the fixing and regulation by boards of supervisors, by ordinance, of the appointment and number of assistants, deputies, clerks, attaches, and other persons to be employed from time to time in the several offices of the county, and for the prescribing and regulating by such

Boards of the powers, duties, qualifications and compensation of such persons,'' etc.

No argument is required to show the invalidity of the amendment to the charter attempting to fix therein the compensation of assistants, deputies, clerks, etc. All that is required is a mere setting forth of the Constitution showing where the power is vested to fix the compensation of such officers.

No action having been taken to fix the compensation of the chief clerk and chief deputy mentioned in the petition, as required by subdivision 5 of section $7\frac{1}{2}$ of article XI of the Constitution, it must be held that the salaries of these officers to which they are entitled have been unchanged, and that they are entitled to the warrants as prayed for. The manner in which the salary of such officers may be regulated or fixed is fully considered in the case of *McPherson* v. *Richards, ante,* p. 462 [25 Pac. (2d) 534], to which reference is hereby made.

As hereinbefore stated, prior to June 27, 1933, and at the time the petitioner became the duly qualified and elected assessor of the county of Butte, the county charter provided that his compensation should not be either increased or decreased during his term of office. On June 27, 1933, there was adopted an amendment to the charter fixing the salary of the assessor at $3,000 per annum, being a reduction of $600 per annum, and at the same election the voters readopted the provision of the charter declaring that the compensation of the officers of Butte County should not be increased or decreased during the term for which they were elected or appointed, making the provision, as we have stated, apply to appointive as well as elective officers. The mere setting forth of these amendments negatives the idea that immediate effect can be given to both of them. Neither of the amendments occupy a position of priority so far as their adoption is concerned. Priority in this case, in legal effect, would be the giving consideration of the one which is adopted last in time. Here, they were both adopted at the same election, subsequently ratified by the legislature in one act. Standing alone both amendments would constitute valid enactments. It is only when the attempt is to give them immediate effect that a conflict arises. Under such circumstances it is the duty of the court to ascertain, if possible, the

intent and purpose of the voters of Butte County in adopting the amendments to the charter and of the legislature in approving the same. Or as said in 59 C. J. 948: "As the intention of the legislature, embodied in a statute, is the law, the fundamental rule of construction, to which all other rules are subordinate, is that the court shall, by all aids available, ascertain and give effect, unless it is in conflict with constitutional provisions, or is inconsistent with the organic law of the state, to the intention or purpose of the legislature as expressed in the statute." And further, in the same volume, page 1051, the rule is further stated: "Statutes *in pari materia*, although in apparent conflict, should, so far as reasonably possible, be construed in harmony with each other, so as to give force and effect to each, as it will not be presumed that the legislature, in the enactment of a subsequent statute, intended to repeal an earlier one, unless it has done so in express terms; nor will it be presumed that the legislature intended to leave on the statute books two contradictory enactments." Here, as we have seen, neither of the provisions occupies the superior position of being a subsequent enactment.

What, then, must be held to be the intention of the voters and of the legislature? We think the answer may be found in the terms of the charter. As heretofore stated, section 2 of article XII of the charter at all times during the incumbency of the petitioner as the assessor of Butte County, provided that his salary should neither be increased nor decreased. This intention was reaffirmed by the voters on the twenty-seventh day of June, 1933. Instead of subtracting from the terms of this provision of the charter, the voters of Butte County added thereto and included within the terms of the section words directing that the salaries of appointive officers after appointment should neither be increased nor decreased during the terms for which they were appointed. If this is true, and we do not see how any other conclusion can be reached as to the intention of the voters of Butte County, then and in that case it follows that it was the intent of the voters of Butte County and also of the legislature, that the amendment to the charter fixing the compensation of the assessor, as well as of the county officers of the county, at a reduced figure, should not take effect until the expiration of the term of office of the present in-

cumbent. The time of fixing the salaries of officers preceding an election not being material, is not considered herein.

Being legally entitled to the compensation as fixed prior to the amendment to the charter of June 27, 1933, it follows that the writs prayed for should be issued. And it is so ordered.

Thompson, J., and Pullen, P. J., concurred.