[L. A. No. 26039. In Bank. Apr. 20, 1961.]

BETTY WALKER et al., Respondents, v. COUNTY OF LOS ANGELES et al., Appellants.

Harold W. Kennedy, County Counsel, William E. Lamor-
eaux, Assistant County Counsel, and Joel R. Bennett, Deputy
County Counsel, for Appellants.

Joseph A. Ball, Milton L. Most, Sidney A. Cherniss, Cy H.
Lemaire and Ball, Hunt & Hart for Respondents.

Bewley, Knoop, Lassleben & Whelan and Martin E. Whelan,
Jr., as Amici Curiae on behalf of Respondents.

DOOLING, J.—This is a representative suit by five county
employees seeking declaratory relief and a writ of mandate
to compel the board of supervisors first to ascertain and
declare the prevailing salary or wage for the same quality
of service rendered to private employers under similar em-
ployment; and then, in the light of such ascertainment, to
adopt an ordinance providing for salary payments to all
persons in the classified civil service equal at least to such
prevailing wage scale. Specifically, petitioners attack a salary
ordinance passed by the board on May 27, 1958, fixing salaries
and wages for the fiscal year beginning on July 1, 1958. They
claim that the board, in adopting said ordinance, did not
follow the required procedure under section 47 of the Los
Angeles County Charter and by such failure, the board has
evaded its mandatory duty. Section 47 provides: ''In fixing
compensation to be paid to persons under the classified civil
service, the Board of Supervisors shall, in each instance, pro-
vide a salary or wage at least equal to the prevailing salary
or wage for the same quality of service rendered to private
persons, firms or corporations under similar employment in
case such prevailing salary or wage can be ascertained.''

The record discloses that a salary ordinance had to be
adopted by the board of supervisors before July 1 of each
year so that a fiscal year's budget could be established. In
line with the provisions of charter section 47, it was the ad-
ministrative practice of Los Angeles County during February
of each year to participate with other political entities in
the area in a joint survey of wage, employment and other
economic conditions then prevailing in that area. This prac-

tice had been consistently followed and hearings were held each year from 1942 to 1958 in order to determine the prevailing wage for comparable work in private industry. It apparently was the common understanding of the board that such procedure satisfied the precepts of section 47.

In 1958 the situation was altered. The customary annual survey was made as of March 1 but the board declined to apply it in fixing salaries for the fiscal year beginning July 1 and adopted an ordinance continuing the wage scale of the preceding year. This action on May 27, 1958, followed two public hearings earlier in the month at which various persons, including the supervisors, county counsel and the chief administrative officer, expressed their views. The discussion and comments centered primarily upon the application of the annual joint survey as the basic criterion for the next fiscal year's salary scale. One of the five supervisors on the board was recently deceased and his successor had not yet been appointed. Twice it was moved that the salary survey be adopted and "declared to be prevailing wages of private industry as prescribed by the County Charter" and twice on different days the motion lost by a tie vote of 2-2. Finally the required ordinance was passed by a vote of 3-1 continuing the preceding year's wage schedule. Supervisor Ford, upon changing his vote to break the tie, stated that he was doing so only for the purpose of having *some* salary ordinance passed in order that the fiscal year's budget could be established, and that he retained his original contention that the board was "in serious error in not recognizing the prevailing salary and wage survey and not applying it to the salary ordinance." Supervisor Hahn, who had previously voted for the adoption of the annual survey as a finding on prevailing wages in private industry, likewise voted for the continuation ordinance so as to have some salary schedule for the coming fiscal year. The third vote for the continuation ordinance was cast by Chairman Chace consistent with his original position against adoption of the joint annual survey. Supervisor Dorn, who likewise had voted against adoption of the joint annual survey, cast the single "no" vote against passage of the continuation ordinance, observing that in his opinion the information before the board was insufficient to justify the making of *any* prevailing wage finding and therefore *no* salary ordinance should be passed.

· During the hearings on the proposed salary ordinance the board had before it the report of its chief administrative

officer recommending against application of the joint salary survey data at that time. Reference was made to the "economic and unemployment picture in the community," the fact that "turnover in County service ha[d] been reduced" to an appreciable degree, and "[f]ull consideration must be given to the financial position of the County and the overall burden of taxation. . . ." The report specifically recommended that the board "make a finding that present rates of compensation for County . . . employees represent salaries or wages at least equal to prevailing salaries or wages for the same quality of service rendered to private firms or corporations under similar employment." It was expressly stated that the "recommendations [were] not in any way to be considered as questioning the findings of the Salary Survey" but were "presented on the basis that the normal application of the survey data [was] not warranted at [that] time because of the overall economic condition of the community, the unusual unemployment situation and the impracticability of a further increase in the general County tax rate to meet the requirements of salary adjustments." It was finally recommended that the chief administrative officer be instructed "to further analyze the economic and employment situation between now and the end of the calendar year to the end that, if [the] Board feels that salary adjustments are then warranted and finances permit, they can be placed into effect on January 1, 1959." In amplification of his report and recommendations during the salary hearings before the board, the chief administrative officer estimated that "minimum application" of the salary survey taken as "prevailing wage report" would run "in the neighborhood of four million dollars" and would affect "approximately forty per cent" of the county's employees. It indisputably appears that the board at no time made a formal finding of "prevailing wages" before adopting the May 27, 1958, salary ordinance.

In November 1958 the matter was reconsidered by the chief administrative officer and the board, and a new ordinance was then passed making an across-the-board wage increase of 5½ per cent, effective January 1, 1959, largely in the light of the March 1 joint salary survey. Apparently the chief administrative officer in November 1958 had altered his position with regard to acceptance of the March 1 salary survey and regarded the survey as consistent with a stabilized economy in indicating an upward trend in salaries so as to be appropriately applicable.

The trial court found, among other things, that the board of supervisors, in adopting the May 27, 1958, salary ordinance, had not ascertained prevailing wages as required by section 47 of the Los Angeles County Charter, and that such action of the board was done ''arbitrarily and capriciously and was so palpably unreasonable as to demonstrate an abuse of discretion as a matter of law.'' Accordingly, the court rendered a declaratory judgment setting forth the rights and duties of the parties and interpreting said section 47 as follows:

''(a) Section 47 of the Charter of the County of Los Angeles is constitutional.

''(b) The duties to be performed by the Board of Supervisors under Section 47 are mandatory.

''(c) Under Section 47 the Board of Supervisors has a quasi-judicial, non-legislative, fact-finding function preceding the performance of the indicated legislative act.

''1. They shall ascertain through any appropriate administrative procedure in each instance of employment in the classified civil service the prevailing salary or wage for the same quality of service rendered to private persons, firms or corporations under similar employment in those instances of employment where such prevailing salary or wage can be ascertained.

''2. They then shall, at least annually, provide by ordinance a salary or wage for each instance of employment at least equal to the said prevailing salary or wage as ascertained.

''(d) The words 'salary or wage' as used in Section 47 do not include fringe benefits such as: sick leave pay, disability benefits, paid vacations and retirement benefits.

''(e) The phrase 'quality of service' means the same class, nature, level or kind of service.

''(f) The term 'under similar employment' as used in Section 47 does not refer to the nature of the work or job security but does refer to the nature of employment such as full time as compared to part time.

''(g) The Board of Supervisors may consider what reasons or forces have been acting upon wages and salaries in private employment only in providing wages and salaries in excess of minimum wages and salaries mandatory under Section 47, provided that nothing herein shall prevent the Board from using any appropriate method of ascertainment thereof and from exercising its sound discretion in determining whether said method has adequately reflected prevailing wages or salaries.

"(h) The Board of Supervisors may consider the tax burden only in providing wages and salaries in excess of the minimum wages and salaries mandatory under Section 47.

"(i) The Board of Supervisors may provide for retroactive salaries and wages.

"(j) Where the Board of Supervisors has passed an amendment to the wage and salary ordinance affecting a wage or salary in any instance of employment in the classified civil service of the County and such ordinance is later determined to have been invalid, the Board of Supervisors may pass an ordinance with retroactive effect to the effective date of the invalid ordinance in those instances where the employee has been denied proper compensation by reason of improper passage of the invalid ordinance."

Conjointly, the court gave judgment that a peremptory writ of mandate issue requiring the board to "proceed at once to ascertain and declare the prevailing salary or wage as of July 1, 1958," and "in so doing that they adhere to their duties as declared by the Court under Section 47 of the Charter of the County of Los Angeles; and adopt an ordinance to pay to each person in the classified civil service of the County of Los Angeles found thereby to be receiving less than the prevailing salary or wage in his or her instance of employment a sum commencing on July 1, 1958, sufficient to make his or her salary or wage at least equal to said prevailing salary or wage in his or her instance of employment."

Defendants contend that the evidence does not support the findings and judgment in petitioners' favor; that the court's declaration that the board's action in adopting the May 27, 1958, salary ordinance was invalid constituted an improper interference with the legislative process; and in any event, the governing charter provision, section 47, imposed no mandatory duty on the board for which mandate would lie to compel performance. Petitioners, on the other hand, contend that reasonable inferences from the undisputed evidence support the findings and judgment in their favor; that the board's preliminary ascertainment of a "prevailing wage" was a mandatory prerequisite to enactment of a valid salary ordinance, and the issuance of a writ of mandate to compel the board's performance of its prescribed duty would not constitute an invasion of legislative discretion.

The concept embodied in section 47 is known as the "prevailing wage" doctrine, and is found in substantially similar terms in the charters of many other California cities

and counties: e.g., San Diego County Charter, section 40 (*Carrier* v. *Robbins*, 112 Cal.App.2d 32 [245 P.2d 676]); Sacramento City Charter, section 52 (*Leftridge* v. *City of Sacramento*, 59 Cal.App.2d 516 [139 P.2d 112]); Los Angeles City Charter, section 425 (*Parker* v. *Bowron*, 40 Cal.2d 344 [254 P.2d 6]); San Francisco City and County Charter, section 151 (*City & County of San Francisco* v. *Boyd*, 22 Cal.2d 685 [140 P.2d 666]). A similar statutory provision is applicable to employees of the State of California. (Gov. Code, § 18850.) Such "prevailing wage" provisions have been held a positive limitation on the board's exercise of discretionary authority in fixing compensation for municipal employees. (*City & County of San Francisco* v. *Boyd, supra*, 22 Cal.2d at p. 690; *Leftridge* v. *City of Sacramento, supra*, 59 Cal. App.2d at pp. 524-525.)

A "prevailing wage" charter provision has been held to be a valid "regulation" of boards of supervisors in charter counties pursuant to article XI, section 7½, subsections 1 and 5, of the California Constitution. (*Cornell* v. *Harris*, 15 Cal.App.2d 144, 148-153 [59 P.2d 570].) Moreover, in the many cases where charter provisions *regulating* boards of supervisors in fixing salary rates for public employees have been considered, implicit in the discussion of the problem is the constitutionality of such "regulation." (E.g., *City & County of San Francisco* v. *Boyd, supra*, 22 Cal.2d 685; *Carrier* v. *Robbins, supra*, 112 Cal.App.2d 32.) Such "regulation" of the board of supervisors in the performance of its duty in fixing salaries is wholly distinguishable from cases cited by defendants where the charter provision entirely takes away or completely usurps the board's duty. (*Jones* v. *De Shields*, 187 Cal. 331, 339 [202 P. 137]; *McPherson* v. *Richards*, 134 Cal.App. 462, 464-466 [25 P.2d 534]; *Morton* v. *Richards*, 134 Cal.App. 665, 668 [26 P.2d 320].)

■■■ Section 47 uses mandatory language to express the fact-finding function of the board as a preliminary duty in fixing compensation for the civil service employees. The section states the board "*shall*, in each instance. . . ." "Shall" has a compulsory or mandatory meaning. (*People* v. *Municipal Court*, 145 Cal.App.2d 767, 775-776 [303 P.2d 375]; *cf.* Gov. Code, § 14.) In *Goodrich* v. *City of Fresno*, 74 Cal.App. 2d 31 [167 P.2d 784], where a city charter provision embracing the "prevailing wage" doctrine was considered, it was said at page 36: "It may be conceded . . . that section 85 of the Fresno Charter is clear, definite and enforceable,

that a prevailing wage statute should be liberally construed in favor of the worker, and that the city officials have no discretion or right to pay these employees less than the prevailing wage referred to in the charter provision."

█ Section 47 requires certain specific matter to be "ascertained" by the board—"prevailing wages" paid in private industry for the same quality of service under similar employment. "Ascertain" means "to fix, to render certain or definite; to establish and determine; to clear of doubt or obscurity . . . to find out by investigation . . . or to hear, to try, and determine." (Black's Law Dictionary, 3rd ed., p. 148.) Such wording indicates a fact-finding function on the part of the board in finally fixing the rate of compensation at or above the minimum coincident with the prevailing wage found. (See *Goodrich* v. *City of Fresno, supra.*) █ The character of the action of the board depends on the nature of the act or duty to be performed, and a fact-finding function may be indicated to precede or accompany the legislative act. (*American Distilling Co.* v. *City Council, Sausalito*, 34 Cal.2d 660, 665 [212 P.2d 704, 18 A.L.R.2d 1247]; *Carrier* v. *Robins, supra*, 112 Cal.App.2d 32, 35.) █ Here section 47 provides for a specific test with which the salary ordinance adopted by the board must comply. While it does not expressly provide that it shall first make a finding on the prevailing wage question or hold hearings in aid thereof before passing an ordinance fixing compensation for civil service employees, the clear implication is that such a determination must be made in some fashion either before or at the time of adoption of the salary ordinance.

Here the record establishes that the board made no finding or determination of prevailing wages and that in fact it declined to make such ascertainment. As above recited, following the two tie votes, Supervisors Ford and Hahn both changed their votes to join Chairman Chace and have *some* ordinance passed for the coming fiscal year. And Supervisor Dorn as the single hold-out in the 3-1 vote for the continuation salary ordinance declared that he did not think the board had sufficient information to justify any prevailing wage finding, and therefore no salary ordinance should be passed. Defendants argue that it should be conclusively presumed that the board, in adopting the May 27, 1958, salary ordinance, made the prerequisite ascertainment, following the necessary investigation and taking into consideration the proper factors. █ However, the "principle which accords the great dig-

nity of conclusiveness to determinations of the general legislature. . . is not only not applied to the proceedings of inferior legislative tribunals, but is distinctly held to be nonapplicable.'' (*San Christina Inv. Co.* v. *San Francisco,* 167 Cal. 762, 770 [141 P. 384, 52 L.R.A. N.S. 676]; see also *Berkeley High School Dist.* v. *Coit,* 7 Cal.2d 132, 136-137 [59 P.2d 992].) We are here asked to indulge the presumption in favor of an inferior legislative body in the face of indisputable proof from the board's own records that it did not in fact ascertain the prevailing wage.

■ That official duty has been performed is a *disputable* presumption. (Code Civ. Proc., § 1963, subd. 15.) ■ Here the presumption was rebutted by the board's own record of its proceedings showing that the board did hold hearings, did announce what factors were considered in relation to the proposed salary ordinance, and did record the reasons for the successive votes culminating finally in passage of the continuation ordinance. From the board's own record it indisputably appeared, from the votes of three of the four members of the board (Ford, Hahn and Dorn) and from their remarks at the hearings, that they believed that no proper finding had been made at the time the board voted on May 27, 1958, to extend the previous year's salary scale for another fiscal year and that in fact they made no such finding. In these circumstances, the trial court found that the board's act in adopting the May 27, 1958, salary ordinance was done ''arbitrarily and capriciously and was so palpably unreasonable as to demonstrate an abuse of discretion as a matter of law.'' Reasonable inferences made by the trial court from undisputed evidence will not be disturbed by the reviewing court. (*Estate of Schultz,* 54 Cal.2d 513, 518 [6 Cal.Rptr. 281, 353 P.2d 921].)

■ Defendants argue that this is not properly a case for declaratory relief because there is no justiciable controversy between the parties, and the court should not undertake to guide the board in the exercise of its legislative discretion. But the record shows that the parties are in fundamental disagreement as to whether or not section 47 requires the ''ascertainment'' of a ''prevailing wage'' minimum as a fact-finding premise for the enactment of the prescribed salary ordinance for civil service employees. ■ ''Declaratory relief must be granted when the facts justifying that course are sufficiently alleged'' (*Columbia Pictures Corp.* v. *De Toth,* 26 Cal.2d 753, 762 [161 P.2d 217, 162 A.L.R. 747]);

its "purpose . . . is to liquidate uncertainties and controversies which might result in future litigation" (*Mefford* v. *City of Tulare,* 102 Cal.App.2d 919, 922 [228 P.2d 847]). This is not an attempt to interfere with a discretionary act of the board in the legislative process (*cf. Carrier* v. *Robbins, supra,* 112 Cal.App.2d 32, 35) but to obtain a clarification of the charter provision, section 47, regulating the board in the performance of its prescribed duty. The interpretation of ordinances and statutes are proper matters for declaratory relief. (*Hoyt* v. *Board of Civil Service Commrs.,* 21 Cal.2d 399, 401 [132 P.2d 804].) Petitioners are not looking to the court to control the board's legislative discretion but to determine the meaning of charter section 47 and its effect on the prescribed legislative process.

Defendants attack specifically the findings of the trial court in the interpretation of section 47: (1) The court found: "(d) The words 'salary or wage' as used in section 47 do not include fringe benefits such as: sick leave pay, disability benefits, paid vacations and retirement benefits." In *Gowanlock* v. *Turner,* 42 Cal.2d 296, at page 310 [267 P.2d 310], this court held that the San Francisco supervisors in determining prevailing wages were not bound or required to consider certain fringe benefits, on the ground that to compel them to do so would impose a difficult burden upon the board "of evaluating an endless variety of benefits." That opinion went no further than to hold that the board was not under legal necessity to engage in such evaluation. In view of the broad discretion necessarily reposed in the board in determining what is the prevailing wage, we are not disposed to extend the holding in Gowanlock so as to foreclose the board from the consideration of any relevant factors in its determination of the prevailing wage, including the consideration, in its discretion, of fringe benefits for such effect upon the prevailing wage as the board may reasonably determine them to have. (*Carrier* v. *Robbins, supra,* 112 Cal.App.2d 32, 33, 35-36; *Goodrich* v. *City of Fresno, supra,* 74 Cal.App.2d 31, 37; *Allen* v. *Bowron,* 64 Cal.App.2d 311, 313 [148 P.2d 673].) It is our conclusion that the trial court unduly restricted the respondents by this quoted finding, and that it should accordingly be stricken from the judgment.

(2) The court found that the phrase "quality of service" as used in section 47 means the "same class, nature, level or kind of service" rather than, as defendants maintain,

having reference to the relative efficiency and competence or performance of public employees; and that the term "under similar employment . . . does not refer to the nature of the work or job security but . . . to the nature of employment such as full time as compared to part time." The only case where the phrase "same quality of service" was discussed appears to be *Parker* v. *Bowron, supra,* 40 Cal.2d 344, where mandamus was sought to compel the city officials of Los Angeles to comply with section 425 of the Los Angeles City Charter, which contains the same language as section 47 here involved in expressing the prevailing wage concept. The majority opinion was decided on the technical point that petitioner had no capacity to sue, and questions affecting the interpretation of the city charter provision were not discussed. However, Justice Carter in his dissent (p. 357) does discuss the contention of whether the "standard fixed by section 425 is general and vague" in relation to the discretion to be exercised by the city council and he says at page 364: "It is true that such phrases as 'quality of service' and 'similar employment' are general and flexible leaving much for determination by the council but a 'reasonable or just' correspondence between the rates paid by private industry and the city is to be ascertained. I do not take the same 'quality' of service to mean of the same competence or perfection. While that is one of the definitions of 'quality,' it also means of the same class or nature of service, such as a carpenter. (Webster's Int. Dict., 2d ed., p. 2031.) The prevailing rate may be ascertained and it is done in many cities." As petitioners emphasize, the interpretation of "quality" in section 47 as relating to competence or efficiency in performance would place a tremendous burden on the board. There is no evidence in the record that the board ever attempted to make a survey of relative competency in arriving at a prevailing wage schedule, and common sense indicates that section 47 contemplates by this language the board's duty to provide at least an equivalent wage as to each civil service category. The term "similar employment" in relation to the determination of prevailing wages has been discussed in two Connecticut workmen's compensation cases—*Johnson* v. *Phaefflin,* 136 Conn. 107 [68 A.2d 687, 689]; *Olivieri* v. *City of Bridgeport,* 126 Conn. 265 [10 A.2d 770, 776, 127 A.L.R. 1471]—where the court held that similar employment meant the comparison of wages of various part-time workers, not part-time with full-time workers. In the Johnson case the court said at page 689: "It is

not the nature of the work but the nature of the employment that governs.''

 ''Mandamus is a proper remedy to compel a city council or a city civil service board to perform its mandatory duties prescribed by the charter.'' (*Leftridge* v. *City of Sacramento, supra,* 59 Cal.App.2d 516, 525.) The courts will not interfere with the board's determination of whether proposed rates of compensation are in accord with generally prevailing rates unless the ''action is fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law.'' (*City & County of San Francisco* v. *Boyd, supra,* 22 Cal.2d 685, 690.) Such an abuse of discretion was present here because the board failed to make the mandatory ascertainment under section 47 and therefore the May 27, 1958, salary ordinance was adopted in disregard of the mandatory charter requirement.

In the Boyd case it was said that ''an ordinance is invalid if the mandatory prerequisites to its enactment are not substantially observed.'' (22 Cal.2d at p. 692; see also *Sullivan* v. *McKinley,* 14 Cal.2d 113, 117 [92 P.2d 892].) Defendants do not argue the correctness of the Boyd decision that the San Francisco charter provision there involved imposed a mandatory duty on the board to adopt a prevailing compensation rate, and it has been so interpreted in *Adams* v. *City & County of San Francisco,* 94 Cal.App.2d 586 [211 P. 2d 368, 212 P.2d 272]. However, defendants do argue that there are two basic kinds of ''prevailing wage'' charter sections in California: (1) the type of section 47 of the Los Angeles County Charter cast in the federal constitutional format, laying down broad general principles and not purporting to regulate details and methods of legislative operation of the board; and (2) the type of section 151 of the San Francisco Charter discussed in the Boyd case, setting forth in detail specific quasi-judicial procedure to be followed by the board and the civil service commission in determining prevailing wages. But this attempted distinction, based on the fact that in Boyd the charter provided more specifically and extensively that a prevailing wage finding be made pursuant to recommendations from the civil service commission before a salary ordinance might be adopted, is not persuasive. Here that duty is imposed on the board alone preliminary to its enactment of a salary ordinance. The same basic legislative policy underlying the ''prevailing wage'' doctrine applies in both cases—to insure that public employees performing serv-

ices substantially similar to those performed by employees in private industry will be paid substantially equal wages, so that competent and qualified persons will be attracted to government service.

Defendants also attack the trial court's decree that the board "may provide for retroactive salaries and wages." The court so held where the salary ordinance enacted is determined to be invalid as here. Defendants contend that such retroactive pay for services already performed would be a gift of public funds or a grant of extra compensation in violation of the state Constitution. (Cal. Const., art. IV, §§ 31, 32.) Petitioners, on the other hand, contend that the same reasoning applies here as in *Tevis* v. *City & County of San Francisco*, 43 Cal.2d 190 [272 P.2d 757], where the same argument was advanced against allowing vacation pay to former municipal employees and it was held that such extra compensation was a "municipal affair" and not subject to the cited constitutional limitations. In like manner, petitioners argue that the salary scale here is a "county affair" within the regulation of the county charter (Cal. Const., art. XI, § 7½) and not subject to the cited constitutional prohibitions. The cases on which defendants rely concern wholly different problems: *Lamb* v. *Board of County Peace Officers Ret. Com.*, 29 Cal.App.2d 348 [84 P.2d 183], where a county motorcycle officer, disabled at a time when there was no retirement act in force applicable to him, sought a pension under a subsequently enacted statute and it was held that the allowance of a pension would be a "gratuity" *contra* to the state Constitution (art. IV, §§ 31, 32); *Conover* v. *Board of Equalization*, 44 Cal.App.2d 283 [112 P.2d 341], where a state employee unsuccessfully sought to recover the difference between the salary paid to her when she was blanketed into civil service in 1934 and the salary authorized under reclassification in 1939 when she had no right to the new position until her classification therein; *Martin* v. *Henderson*, 40 Cal.2d 583 [255 P.2d 416], and *Jarvis* v. *Henderson*, 40 Cal.2d 600 [255 P.2d 426], where it was held that former state highway patrol officers were not entitled to overtime pay for hours worked because under the terms of their state employment they received fixed monthly salaries and were bound to render all such services as might be necessary in the performance of their duties. It appears to be a proper distinction that in the cited cases the employees were seeking compensation in addition to that which had been legally provided whereas in

the case before us petitioners are seeking to have their compensation legally fixed in the manner which the charter requires.

Defendants finally claim that this case is moot because in November 1958, which was before the trial (March 1959), the board granted an across-the-board 5½ per cent salary increase to petitioners and all the other county civil service employees. Defendants claim that this salary increase was voted because the board could see the prevailing upward trend in employment and it was twice the magnitude of what the joint wage survey submitted in March 1958 indicated with respect to prevailing wages. Petitioners point out that the general salary increase did not become effective until January 1, 1959, so that there still remained the prior six months' period (from July 1, 1958) without a proper salary ordinance; and there is nothing in the record to indicate that the board in providing such blanket increase made the mandatory ascertainment of "prevailing wages" prior to enacting the November 1958 ordinance, since the November proceedings are not a part of the record in this case.

The judgment is amended by striking therefrom paragraph "(d)" herein discussed and, as so amended, it is affirmed. Respondents to recover their costs on appeal.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.