[Civ. No. 46123. Second Dist., Div. Three. Oct. 28, 1976.]

BERNARD C. GOTTLIEB et al., Plaintiffs and Appellants, v.
DEPARTMENT OF WATER AND POWER OF THE CITY OF LOS
ANGELES et al., Defendants and Appellants.

COUNSEL

Frank Morales and Mohi, Morales & Glasman for Plaintiffs and Appellants.

Burt Pines, City Attorney, Edward C. Farrell, Chief Assistant City Attorney, and Ned Flusty, Deputy City Attorney, for Defendants and Appellants.

OPINION

COBEY, J.—These are cross-appeals in a mandamus proceeding, which was brought on behalf of all of the employees of the Department of Water and Power of the City of Los Angeles (hereafter DWP) by petitioners and appellants, Bernard C. Gottlieb, et al. DWP and its board of commissioners[1] have cross-appealed.

The judgment under appeal and cross-appeal denied all relief to petitioners, but expressly decreed that various specified claim requirements of the Charter of the City of Los Angeles (§§ 363, 376, 376.1) were inapplicable to the proceeding. The DWP, by its cross-appeal, challenges the validity of this provision of the judgment and also contends that the nonobserved claims requirements of the California Tort Claims Act (Gov. Code, § 810 et seq.) also barred the proceeding. We will consider the cross-appeal first.

### THE CROSS-APPEAL

This is a special proceeding in mandamus brought to determine whether the DWP during the fiscal years 1968-1969, 1969-1970, 1970-1971 and 1971-1972 determined and provided to its employees prevailing wages as required by section 425 of the city charter. (See *Sanders* v. *City of Los Angeles,* 3 Cal.3d 252, 262 [90 Cal.Rptr. 169, 475 P.2d 201].) ■ Mandamus is a proper remedy to compel the performance of this mandatory but preliminary duty of determination of such wages. (Code Civ. Proc., § 1085; *Walker* v. *County of Los Angeles,* 55 Cal.2d 626, 639 [12 Cal.Rptr. 671, 361 P.2d 247].) ■ In view of the nature of this proceeding the requirements of the California Tort Claims Act

---

[1] For convenience cross-appellants will hereafter be referred to simply as DWP.

clearly do not apply to it (see Gov. Code, § 814)[2] and the aforementioned provisions of the city charter relating to claims for money or damages likewise do not apply for the same reason. (Cf. *Coan v. State of California,* 11 Cal.3d 286, 291 [113 Cal.Rptr. 187, 520 P.2d 1003]; *Glendale City Employees' Assn., Inc.* v. *City of Glendale,* 15 Cal.3d 328, 343 [124 Cal.Rptr. 513, 540 P.2d 609].)

## THE APPEAL

The aforementioned section 425 of the Los Angeles City Charter, in relevant part, reads: "In fixing the compensation to be paid to persons in the city's employ, . . . [DWP] [3] shall, in each instance, provide a salary or wage at least equal to the prevailing salary or wage for the same quality of service rendered to private persons, firms or corporations under similar employment, in case such prevailing wage or salary can be ascertained."

Since 1947 the DWP has annually surveyed the salaries and wages paid by it with respect to some 60 benchmark jobs in the private sector within the Los Angeles metropolitan area and elsewhere. In the case of these jobs within the utility industry its survey has concentrated upon the four or five major gas and electric utilities operating generally within California (currently Pacific Gas and Electric Co., Southern California Gas Co., Southern California Edison Co., and San Diego Gas and Electric Co.). In the fiscal years in question, namely, the aforementioned 1968-1969, 1969-1970, 1970-1971 and 1971-1972, this survey included from 29 to 32 firms. In addition to the just-mentioned gas and electric utilities, such firms included other privately and publicly owned utilities and a small number of largely blue ribbon private industrial establishments. These private firms on the whole apparently paid higher wages for comparable positions than those generally prevailing in Los Angeles County.

The DWP had during these years some 12,000 employees occupying over 2,200 differently described positions. "Prevailing wages" for all

---

[2]Section 814 reads: "Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee."

[3]See Los Angeles City Charter sections 70, subdivision (a), 86.

positions were determined by preparing a regression line[4] from the weighted averages of the wages paid in the benchmark jobs[5] within the private sector and then comparing that line with a similarly prepared line for the corresponding DWP jobs.

The reasonableness of this particular sampling method for determining prevailing wages is not generally an issue in this proceeding. All agree that it would be economically infeasible for the DWP to survey private industry locally for prevailing wages paid for each of its 2,200 or more classes of positions. A regression line, however, should be composed of benchmark jobs changing in compensation at approximately the same general rate. Otherwise more accurate determinations of prevailing wages may be obtained through the use of a number of such lines as opposed to only one.[6]

Petitioners contend that the annual wage and salary survey of the DWP is unreasonable and arbitrary (see *Sanders* v. *City of Los Angeles, supra,* 3 Cal.3d at 261) in the following respects: (1) it does not attempt to survey for nonutility positions the whole local private labor market in which it seeks such employees generally; (2) it divides for pay purposes its building trades crafts into maintenance and construction groups; (3) it did not pay its employees in any of the four years at issue pursuant to its own prevailing wage determinations.

We will now consider these contentions seriatim. ■ Petitioners are correct in their first contention that under section 425 of the city charter the DWP is under a mandatory duty to survey annually the complete local private labor market in which it seeks its employees generally[7] to determine the prevailing wages for comparable positions required of it by the section. The record shows without contradiction that the local

---

[4]A regression line is a line of best fit determined algebraically.

[5]The 60 benchmark jobs correspond to positions occupied within the DWP by perhaps 5,600 of the 12,000 employees.

[6]Apparently DWP has long used in effect two regression lines—one for subprofessional employees and the other for professional employees. Whether more lines are needed in any year depends upon the relative movement of wages within the various main occupational groups.

[7]The Los Angeles metropolitan area appears to be the principal labor market for the DWP which apparently hires all of its permanent employees through the city civil service commission. Although the DWP operates in localities considerably removed from this metropolitan area, there is no evidence in the record before us that any substantial number of its permanent employees are hired outside of the Los Angeles metropolitan area.

labor market in nonutility positions extends far beyond the previously mentioned major gas and electric, privately owned utilities upon which DWP primarily relied and well beyond as well the few other private business establishments included in its comparatively small list. A reasonably accurate survey must at least sample representatively the private pay rates within the entire labor market. This the DWP survey never purported to do with respect to nonutility positions. The DWP instead did as many private businesses do—it surveyed chiefly only its own competition in the private gas and electric utility business. Furthermore, of the 60 benchmark jobs surveyed by it only about 11 are peculiar to the utility industry. There are then somewhere around 50 benchmark jobs with respect to which the DWP should either make a statistically comprehensive, though limited, survey within private industry or otherwise participate in the saturation survey that has long been conducted annually by the City of Los Angeles, the County of Los Angeles, the Los Angeles City School District and the Los Angeles City Housing Authority.[8] In this connection we recognize that the determination of prevailing wages is not an exact science and that there is more than one reasonable way of determining prevailing wages pursuant to section 425.

■ We reject petitioners' second contention attacking the reasonableness of the DWP's practice of dividing its building trades crafts' employees into two occupational groups—(1) the lower paid, full-time, annual salaried, generally one location maintenance employees, and (2) the temporary, union scale, daily or hourly paid construction employees.

It is true that these two occupational groups are generally equally skilled and qualified and that they use the same tools of their respective trades in their work. The maintenance employees, though, work primarily on maintenance; the construction employees work primarily on new construction in varying locations and on a project-by-project basis. The maintenance employees are hired through the city civil service commission while the construction employees are hired through their respective unions. The maintenance employees constitute a permanent cadre and normally work at but one location. The construction employees, on the other hand, work only intermittently at various locations on various projects.

---

[8]This survey covers all business firms employing over 250 employees in Los Angeles County plus some smaller firms that contain jobs comparable to certain of the survey's benchmark jobs that cannot be found in sufficient quantities in the larger firms. The survey covered in 1971 some 600 to 661 firms.

Petitioners claim that the basic difference in the employment conditions in these two groups of employees is "job security" and that under the aforementioned *Walker* v. *County of Los Angeles* (55 Cal.2d at p. 638) job security may not be considered. It is true that in *Walker* the phrase "under similar employment", in the essentially identical provision in the Los Angeles County Charter (see 55 Cal.2d at p. 629), was expressly construed by the trial court as not referring to "job security," but instead to "the nature of the employment such as full time as compared to part time" and that this construction was apparently approved by our Supreme Court.

The term "job security," however, was not defined in that decision. The court there may have been referring only to the comparatively greater security generally of government employment as compared with private employment. The fact remains that in this case the nature of the employment of these two groups of generally skilled employees by the DWP is fundamentally different. One group has full-time employment on an annual salary; the other group enjoys intermittent employment at union rates. We see nothing unreasonable in the DWP classifying these two groups differently for pay purposes.

This brings us to petitioners' final contention—namely, that the DWP did not pay prevailing wages as determined by it in any of the four fiscal years at issue. In the first three years—namely, the fiscal years 1968-1969, 1969-1970 and 1970-1971, it paid instead the across-the-board percentage increases given by the aforementioned major gas and electric utilities.[9] In the last year the DWP's salary standards section recommended on the basis of the survey data developed by it a series of progressive increases to various segments of the occupational groups comprising the regression line to reflect the variance in the actual rates of change of private wages in the local labor market, but the DWP instead awarded another across-the-board increase.[10]

The trial court found, in effect, and concluded that the DWP complied with the requirements of section 425 in each of the four fiscal years in issue. Its findings to this effect, however, are not supported by substantial evidence and its legal conclusion of complete compliance is in error.

[9]The first and third year's increases corresponded quite closely to the results of the DWP's own survey of these utilities' salaries and wages.

[10]In the following fiscal year the previously recommended progressive increases policy was put into effect.

From its memorandum of intended decision, it is clear that it concluded that since the DWP by and large probably paid above "prevailing wages" to its employees during the years in question, it had thereby fully complied with the requirements of section 425. We do not agree. ■ In our view, to comply fully with section 425, the DWP had to first determine in a reasonably accurate and comprehensive manner the prevailing wages paid by private employers to those employees occupying comparable positions in the aforedescribed private labor market in which the DWP generally hires its employees and then each year to pay pursuant to such determinations wages at least equal to such prevailing wages. This it did not do in any of the four years in question. In short, it must comply with section 425 both in the methods it uses in determining prevailing wages thereunder and in providing its employees thereafter with wages that are paid pursuant to such determinations.[11]

The judgment under appeal and cross-appeal is reversed. The trial court is directed to order the issuance of an appropriate writ of mandate commanding the Board of Water and Power Commissioners of the Department of Water and Power of the City of Los Angeles to resurvey in a reasonably accurate and comprehensive manner the salaries and wages paid for comparable private positions in the local labor market during the fiscal years 1968-1969, 1969-1970, 1970-1971, and 1971-1972 and then to provide to its employees salaries and wages at least equal and pursuant to such determinations. Appellants only shall recover their costs on appeal.

Ford, P. J., and Allport, J., concurred.

A petition for a rehearing was denied November 23, 1976, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied December 22, 1976.

---

[11]In regard to the fiscal years litigated in this proceeding, petitioners may not desire a resurvey in view of the fact that the DWP apparently paid during these years salaries and wages in excess of those required by section 425. But if they insist upon a resurvey it can be quickly and economically provided by using generally the results of the previously mentioned joint salary survey of the City of Los Angeles, etc. for non-utility positions and the DWP's own data for utility positions.