[Civ. No. 46654. First Dist., Div. One. Mar. 3, 1982.]

UNION OF AMERICAN PHYSICIANS, Plaintiff and Appellant, v. CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents.

**COUNSEL**

Barry S. Jellison, Duane W. Reno and Davis, Cowell & Bowe for Plaintiff and Appellant.

George Agnost, City Attorney, and Michael C. Killelea, Deputy City Attorney, for Defendants and Respondents.

OPINION

GRODIN, J.—This appeal is from a judgment denying a petition for writ of mandate sought by appellant, Union of American Physicians, on behalf of physicians employed by the City and County of San Francisco. Respondents are the Civil Service Commission, its members, and the Board of Supervisors of the City and County of San Francisco. Appellant contends that respondents failed to survey and fix salaries for such physicians for the fiscal year 1977-1978 in the manner and at the levels required by section 8.407 of the San Francisco Charter. Whether that contention is correct is the issue on appeal.

*Background*

The text of section 8.407, which was added to the charter by enactment of Proposition D in November 1976, is set forth in the appendix. In summary, section 8.407 provides a formula for determining the pay range for each "benchmark class." A "benchmark class" is defined as "a 'key class' within an occupational grouping selected as the class for which a representative sample of data will be collected." In this case, the benchmark class, as designated by the Civil Service Commission, is 2230 physician specialist. The prevailing rates for related job classifications are computed from the prevailing rate of wages determined for the benchmark classification.

The charter formula calls for a "comprehensive investigation and survey of basic pay rates and wages and salaries in other governmental jurisdictions and private employment for like work and like service, based upon job classifications as provided in section 3.661 of this charter," and a finding as to "what are the generally prevailing basic pay rates for each benchmark class." Primarily, data is to be collected from the Bay Area counties, but if there is insufficient data from those jurisdictions, then the commission is to "survey major public agencies in the state employing such class, major public agencies to be defined as those employing more than 3,000 persons." The term "prevailing rates of wages" is defined as "the rate ranges developed from the weighted average of the midpoint of the basic pay rates, excluding fringe bene-

fits, for surveyed public employments and the median of the pay rates for private employment," in accordance with a specific formula. Section 8.407 also provides: "For those classifications of employment in which the practice is customary, the schedules of compensation shall provide for minima, not less than three intermediate, and maxima salary steps."

In conducting its survey to determine salary for the benchmark 2230 physician specialist classification for fiscal year 1977-1978, the commission found there was insufficient relevant data from public jurisdictions in the Bay Area, and so turned to other jurisdictions, including Los Angeles County. Within that jurisdiction, the commission determined that the classification most comparable to the benchmark class was that of "Physician Specialist, M.D." The compensation scheme for that classification consisted of a salary ladder with 18 steps; the Los Angeles ordinance provided for initial placement on the salary ladder based upon experience and training, and for a one-step advancement every two years, up to a maximum of nine step increases. The salary for the lowest rung on the ladder was $2,879 per month, and the maximum was $5,196 per month.

Instead of selecting the midpoint of the Los Angeles salary range, as appellant contends was required by section 8.407, the commission chose for purposes of its computation a single rate of $3,120 per month, corresponding to the fourth step on the salary ladder. Step increases for physicians employed by Los Angeles County had been "frozen" for the year, so that physicians were not permitted to advance from one salary step to another, and it is that fact which respondents contend justified departure from the midpoint requirement. Step four was selected, the trial court found, because the commission found it to be the "most comparable to the majority of physician specialists in the service of the City and County of San Francisco."

*Discussion*

It has been held that prevailing wage provisions such as section 8.407 are "clear, definite, and enforceable ... [and] should be liberally construed in favor of the worker," so that "city officials have no discretion or right to pay ... employees less than the prevailing wage referred to in the charter provision." (*Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 634-635 [12 Cal.Rptr. 671, 361 P.2d 247], quoting from *Goodrich* v. *City of Fresno* (1946) 74 Cal.App.2d 31, 36 [167 P.2d 784].)

Referring to prevailing wage charter provisions generally, the Supreme Court has said: "[A]s a rule, such charter provisions do not set forth any specific formula by which the prevailing wage is to be determined, but instead leave to the legislating body the choice between the various reasonable alternative means of calculating 'prevailing wages.'" (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 919 [120 Cal.Rptr. 707, 534 P.2d 403].) Where that is the case, "the legislative body retains a considerable degree of discretion in establishing compensation pursuant to such a 'prevailing wage' mandate. [Citations.]" (*Ibid.*)

*Cooper* involved a then broadly phrased San Francisco charter provision requiring payment of compensation "in accord with the generally prevailing rates of wages for like service and working conditions in private employment or in other comparable governmental organizations in this state." (13 Cal.3d at p. 906.)

All of the cases cited in *Cooper, supra*, 13 Cal.3d 898, on this point turned on similarly general language. (*Alameda County Employees' Assn.* v. *County of Alameda* (1973) 30 Cal.App.3d 518, 530 [106 Cal.Rptr. 441] ("a salary or wage at least equal to the prevailing salary or wage, . . . in case such prevailing salary or wage can be ascertained"); *Collins* v. *City & Co. of S. F.* (1952) 112 Cal.App.2d 719, 730-731 [247 P.2d 362] (same language as interpreted in *Cooper*); *Goodrich* v. *City of Fresno* (1946) 74 Cal.App.2d 31, 36-37 [167 Cal.Rptr. 784] (not less than the prevailing wage paid in private employment in said city in the trade in which such employees work); *City and County of S. F.* v. *Boyd* (1943) 22 Cal.2d 685 [140 Cal.Rptr. 666] (same language as interpreted in *Cooper*).)

In 1976 the voters of San Francisco substituted for this broadly phrased charter language provisions which, for covered classifications, did "set forth [a] specific formula by which the prevailing wage is to be determined." (*City and County of San Francisco* v. *Cooper, supra*, 13 Cal.3d at p. 919.) That formula requires the commission to develop rate ranges from the weighted average of the "midpoint of the basic pay rates" for the surveyed classes. There is no dispute as to what constitutes the "midpoint" between the minimum and maximum rates for the comparable class in Los Angeles. The commission's contention is that it was not required to use the midpoint because, for the year in question, Los Angeles salaries were frozen. The question thus posed is one of

statutory interpretation. (*State Trial Attorneys' Assn.* v. *State of California* (1976) 63 Cal.App.3d 298, 303 [133 Cal.Rptr. 712].)

Respondents urge, in support of their contention, that "rate ranges" need be included in the salary survey "only if rate ranges are available for the particular surveyed class," and that the charter does not preclude use of "flat rates" if no "rate range" is available. That proposition conceded, its application to the instant case is misplaced. The fact that physicians employed by the County of Los Angeles were "frozen" at existing steps on the salary ladder does not mean that the ladder ceased to exist, or that no rate range was "available."[1] ▮ We conclude that respondents, by selecting a single rate other than the midpoint rate, violated the clear mandate of section 8.407.

On remand, the trial court will issue a writ of mandate commanding the civil service commission to recompute the prevailing basic pay rates for fiscal year 1977-1978 for the benchmark classification "2230 Physician Specialist" on the basis of the midpoint for the "Physician Specialist, M.D." job classification in Los Angeles County, and further commanding the board of supervisors to fix wage rates for that year for the physicians employed by the City and County of San Francisco as close as reasonably possible to the prevailing basic pay rates which result from such recomputation.

Racanelli, P. J., and Elkington, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 28, 1982.

---

[1]Respondents argue that it would be inconsistent with the purpose of section 8.407 to interpret it as excluding a rate of pay which is "uniformly paid to all employees." Assuming merit to that argument, there was no showing that all physicians employed by the County of Los Angeles were paid the rate selected by the commission for its survey.

APPENDIX

8.407 Definition of Generally Prevailing Rates of Wages

Notwithstanding any provision of section 8.401 or any provision of any other section of this charter to the contrary, generally prevailing rates of salaries and wages for those employees covered by section 8.401 of the charter shall be determined by the civil service commission as set forth below.

The civil service commission shall conduct a comprehensive investigation and survey of basic pay rates and wages and salaries in other governmental jurisdictions and private employment for like work and like service, based upon job classifications as provided in section 3.661 of this charter and shall make its findings, based on facts and data collected, as to what are the generally prevailing basic pay rates for each benchmark class of employment solely in the manner hereinafter provided. A benchmark class is defined as a "key class" within an occupational grouping selected as the class for which a representative sample of data will be collected.

Basic pay rate data for public and private employment shall be collected solely from the Bay Area counties of Alameda, Contra Costa, Marin, San Mateo, San Francisco and Santa Clara; provided, however, that for any benchmark class of employment for which the civil service commission determines there is insufficient data from Bay Area public jurisdictions the commission shall survey major public agencies in the state employing such class, major public agencies to be defined as those employing more than 3,000 persons.

The commission shall collect basic pay rate data for like work and like service from Bay Area public jurisdictions as follows:

(a) The counties of Alameda, Contra Costa, Marin, San Mateo and Santa Clara.

(b) The ten most populous cities in these five Bay Area counties based on the latest federal decennial census.

(c) Agencies of the state and federal governments and from school districts and other special districts in the six Bay Area counties as determined by the civil service commission. The commission shall collect private basic pay rate data from recognized governmental Bay Area salary and wage surveys of private employers in the city and county of San Francisco, Alameda, Contra Costa, Marin, San Mateo and Santa Clara counties. The data collected shall be limited to rates of pay and salaries actually being paid by private employers for like work and like service.

The term "prevailing rates of wages" for employees governed by charter section 8.401 and this section shall be defined as the rate ranges developed from the weighted average of the midpoint of the basic pay rates, excluding fringe benefits, for surveyed public employments and the median of the pay rates for private employment to be determined as follows:

(1) multiply the medians from the private and the midpoints from public employments data base by the number of employees in the given classification from each data base;

(2) add the products of (1);

(3) divide the sums in (2) by the total number of employees surveyed for that classification; and

(4) extend this figure by 10 percent to establish the maximum of the range and reduce this figure by 10 percent to establish the minimum.

When fixing rates of compensation the board of supervisors shall fix basic pay rates as close as reasonably possible to prevailing rates, provided, however, that the board of supervisors shall not set the maximum rate of pay for any class in excess of the maximum prevailing rate for that class; provided further, however, that no employee shall have his basic pay rate reduced to conform to prevailing rates except as provided for in section 8.406. For those classifications of employment in which the practice is customary, the schedules of compensation shall provide for minima, not less than three

intermediate, and maxima salary steps and for a method of advancing the salaries of employees from minimum to intermediate to maximum with due regard for seniority of service.

The term "basic pay rate" as used in this section is hereby defined as applying only to the basic rate of wages, with included range scales, and does not include any other benefits of employment or working condition benefits.