[S. F. No. 16248.   In Bank.—July 31, 1939.]

EDWARD SULLIVAN, Respondent, v. HOWARD M. Mc-KINLEY et al., Appellants.

John J. O'Toole, City Attorney, and Thomas P. Slevin, Deputy City Attorney, for Appellants.

Allen G. Wright and Wright & Wright & Larson, as *Amici Curiae*, on Behalf of Appellants.

John J. Dailey for Respondent.

THE COURT.—This court, recognizing the importance this case might have upon the budgetary and fiscal procedure of the city and county of San Francisco under its charter provisions, took over the cause for further consideration, and now, after reargument, we are satisfied to adopt the opinion of the late Mr. Presiding Justice Tyler as follows:

"Petition for writ of mandate on behalf of certain auto and car painters of the Municipal Railway Department. After issue joined, a trial was had which resulted in a judgment directing the issuance of a peremptory writ of mandate against the defendants granting the demands of petitioner. From the ruling in the court below, this appeal is prosecuted. The record reveals the following facts:

"Petitioner, together with eight other individuals, is employed as an auto and car painter in the Municipal Railway Department, which is a division of the Public Utilities Commission of the city and county of San Francisco. During the fiscal year 1936–37, the wage of petitioner and his eight co-workers as auto and car painters in said department was fixed and established at $9 per day. Pursuing the steps necessary to provide the funds needed to carry on the various functions under the control of the Public Utilities Commission

for the fiscal year 1937–38, that body prepared budget estimates for the different utilities under its jurisdiction, one of which was that of the Municipal Railway. The budget estimate recommended by the Public Utilities Commission for the class of car and auto painters carried the rate of $9 per day, and the estimated amount necessary to pay for such number of employees at the indicated rate was $22,599. This budget estimate originating with the Public Utilities Commission was joined with the budget estimates coming from other departments and offices of the city government by the Controller, and formed the consolidated budget estimate of all municipal divisions for transmission to the Mayor. The Mayor then gave consideration to the consolidated budget estimate, in which was that of the Municipal Railway. When he came to the item of 'car and auto painter', he accepted the recommendation concerning the number of employees, their daily rate of wage, and the amount necessary to be appropriated in order to satisfy the same, as theretofore set forth by the Public Utilities Commission, and ordered his recommendation to be entered in the proper sheet. The Mayor, after completion of the numerous budget estimates as contained in the consolidated budget estimate, transmitted his recommendations thereon to the Board of Supervisors for its consideration and action. With the consolidated budget, as recommended by the Mayor, went a proposed appropriation ordinance to the said Board of Supervisors. The legislative division then reviewed the recommendations of the Public Utilities Commission and the Mayor. This resulted in the board adopting the figures set out by the Commission and the Mayor in reference to car and auto-painters. On Monday, May 24, 1937, the budget for the fiscal year 1937–38 was adopted by the Board of Supervisors. Shortly thereafter, to wit, on June 2, 1937, the annual appropriation ordinance for the fiscal year 1937–38 was adopted by the Board of Supervisors and approved by the Mayor.

"Under date of June 15, 1937, E. G. Cahill, the manager of utilities, Public Utilities Commission, addressed a letter to the Mayor requesting that the daily rate of wage of car and auto painters be fixed at $10 instead of $9 a day. The Mayor and the Board of Supervisors in the annual salary ordinance 1937–38, which was adopted on the 28th day of June, 1937, provided for nine car and auto painters, Munici-

pal Railway, at $10 per day instead of the $9 rate theretofore established in the budget and appropriation ordinance. The question to be determined is whether the Board of Supervisors and the Mayor, in fixing in the annual salary ordinance a rate of wage for auto and car painters different from that in the budget estimate of the employing department, and in the recommendation of the Mayor, and in the budget of said Board and Mayor, violate the terms of the organic law. The trial court found that the adoption of the budget estimate of expenditures for the year 1937–38, incorporating the wage rate to be paid petitioner and his associates did not control, and they recovered the amount contained in the salary ordinance.

''Two questions are raised on the appeal. The first concerns the admissibility into evidence of the letter dated June 15, 1937, whereby E. G. Cahill requested a change in the rate of pay of petitioner and his coworkers, it being the claim of appellants that there were no provisions under the charter permitting Mr. Cahill to send the communication; the second, that the legal effect of the evidence adduced before the trial court does not justify its findings.

''The city and county of San Francisco as a municipal corporation operates under a freeholders' charter. Section 69 of said instrument reads as follows: ' . . . The budget estimate for every department and office of the city and county, whether under an elective or an appointive officer or a board or commission, and separately for each utility under the control of the Public Utilities Commission, shall be filed by the executive of such department with, and shall be acted upon by, such board or commission. All budget estimates shall be compiled in such detail as shall be required on uniform blanks furnished by the controller. The Public Utilities Commission and the board of education must hold public hearings on their respective budget proposals. Each such elective and appointive officer, board or commission shall, not later than the 15th day of February of each year, file with the controller for check as to form and completeness two copies of the budget estimate as approved . . . '

''Section 70 of the charter, among other things, provides: '(4) A schedule of positions and compensations showing any increases or decreases requested in the number of positions or rates of pay.'

"The budget estimate for the fiscal year 1937–38 for the Municipal Railway did not show any increase in the rate of pay for the position of car and auto painter. The evidence shows without conflict that the budget estimate for the Municipal Railway, as prepared in conformity with the terms of section 70 of the Charter and as approved by the Public Utilities Commission for submission to the Mayor, stated the amount to be paid was $9 a day out of a fund of $22,599. No ordinance is valid unless and until the mandatory prerequisites to its enactment and performance are substantially observed. The evidence adduced before the trial court shows a failure of the responsible authorities to do the things essential within the time prescribed by the basic municipal law for the creation of an increase in wages, and establishes without conflict a wage rate of only $9 a day for the indicated positions.

"Section 71 of the Charter provides: 'All increases in salaries or wages of officers and employees shall be determined at the time of the preparation of the annual budget estimates and the adoption of the annual budget and appropriation ordinances, and no such increase shall be effective prior to the fiscal year for which the budget is adopted. . . . ' .

"The time for establishing an increase in wage rate of municipal employees, such as the petitioner and his eight companions, is before the passage of the annual salary ordinance. And the instruments within which the increase of the rate of wage is to be expressed are (1) annual budget estimates, (2) annual budget, and (3) appropriation ordinance. Once the budget is approved by the Board of Supervisors, the fiscal terms of the annual appropriation ordinance and the annual salary ordinance are automatically fixed beyond the power of change by any amendment. Any effort of the Board of Supervisors to increase a wage scale in the annual salary ordinance over the amount provided in the approved budget is void. The Mayor must submit his proposed budget to the Board of Supervisors each year not later than the 1st day in May. (Charter, sec. 72.) After public hearing and not earlier than the 15th day of May, nor later than the 1st day of June, the Board shall adopt the proposed budget as submitted or as amended, and shall pass the necessary appropriation ordinance. If in that period the Mayor should request the Board to increase any salary or wage schedule, the Board

could provide for such increase by amending the proposed budget accordingly, provided the Mayor's request was made on the proper recommendation of the department or office concerned. But each increase though so requested could not be made in the annual salary ordinance unless previously made in the proposed budget, for the reason that the annual salary ordinance is limited by the provisions of the approved budget.

"It must be remembered that the budget found on the estimates submitted by the Public Utilities Commission, approved and recommended by the Mayor, and adopted by the Board of Supervisors, was finally approved on May 24, 1937; that the appropriation ordinance providing the funds to meet the items in the aforesaid budget was adopted by the Board of Supervisors on June 1, 1937, and approved by the Mayor on the 2d day of June, 1937; that these instruments, together with the estimates furnished by the commission did in no instance provide a daily wage rate of $10 for the petitioner and his associates, but did on the contrary provide a rate of $9 a day. It must also be remembered that the annual salary ordinance which carried the wage rate of $10 a day for the interested persons was passed twenty-six days later, on June 28, 1937, and represented an increase in wage rate of $1 a day, together with shorter hours. From what we have said it is obvious that the payment of an increase in the wage rate of petitioner and the other car and auto painters is a direct and positive disregard of the terms of section 71 of the charter.

"Our conclusion renders unnecessary a disposition of the question of the authority of Mr. Cahill to send to the Mayor his request for the increase in pay. ██ Respondent claims that the increase in the wage rate of himself and his associates did not necessitate an increased appropriation. The fact remains, however, that it is an increase in rate of wage in a manner not authorized by the city charter, and the mere fact that the appropriation made available to the Municipal Railway Department was sufficient to pay the wages of petitioner and his associates is unimportant."

To the foregoing it might be added that, under the charter, salaries and wages are not fixed by the salary ordinance alone. The principal purpose of that document seems to be to bring the salaries and wages as finally determined into one ordinance for more convenient reference.

Section 71 of the charter provides that "all increases in salaries or wages of officers and employees shall be determined at the time of the preparation of the annual budget estimates and the adoption of the annual budget and appropriation ordinances . . . " These ordinances must be adopted not later than June 1st of each year.

It is significant that here the annual budget estimates as submitted by the Mayor fixed the wage scale for auto and car painters at $9 a day, and no change in that amount was indicated in the appropriation ordinance. On June 1st, in accordance with the charter, the Board, without amendment and after public hearing, adopted the budget and passed the appropriation ordinance. On June 14th the annual salary ordinance was passed to second reading and then provided for $9 as the wage scale of car and auto painters. On June 15th a request was filed by Mr. E. G. Cahill, Manager of Public Utilities, approved by the Mayor, requesting that the daily rate of wages of the car and auto painters be fixed at $10 instead of $9. On June 28th the salary ordinance was adopted and for the first time the rate of $10, rather than $9, per day for these employees was accepted.

The wage scale of these car and auto painters had not been fixed at the rate of $10 per day "by the budget and annual salary ordinance", as required by section 71, and clearly, from this language, the salary ordinance must find its support in the items of the budget.

The judgment directing the issuance of a peremptory writ of mandate is reversed.