[Civ. No. 30523. Second Dist., Div. Three. Dec. 28, 1967.]

PHILL SILVER, Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Respondents; SEARLE L. BENNETT et al., Interveners and Respondents.

Phill Silver, in pro. per., for Plaintiff and Appellant.

Roger Arncbergh, City Attorney, Bourke Jones and James A. Doherty, Assistant City Attorneys, for Defendants and Respondents.

Bewley, Lassleben, Whelan & Miller, Bewley, Lassleben & Whelan, Martin E. Whelan, Jr., and Edward L. Miller for Interveners and Respondents.

FORD, P. J.—As a taxpayer residing in the City of Los Angeles the plaintiff sought to enjoin the defendant city and the named officers from making any payment to captains of the city's fire department under the provisions of an ordinance.[1] The superior court denied the relief sought and the plaintiff has appealed.

The pertinent facts are not in dispute.

On May 13, 1965, the city council adopted an ordinance amending Ordinance No. 89,935 which was known as the "Salary Standardization Ordinance for Firemen and Police-

---

[1]Section 526a of the Code of Civil Procedure is in pertinent part as follows: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."

men of the City of Los Angeles.'' The portion of the amendment here relevant is that which placed the position of captain of the fire department in salary schedule number 50. On May 22, 1965, the mayor returned the ordinance to the council without his approval.

On May 26, 1965, the city council adopted Ordinance No. 130,143, which was approved by the mayor on that date and, pursuant to section 4 thereof, was to become operative on July 1, 1965. That ordinance amended Ordinance No. 89,935, the ordinance known as the ''Salary Standardization Ordinance for Firemen and Policemen of the City of Los Angeles.'' The portion of the amendment here relevant is that which placed the position of captain of the fire department in salary schedule number 48.

On June 8, 1965, the city council adopted Ordinance No. 130,266, by which Ordinance No. 89,935 (hereinabove noted in this opinion) was amended in certain particulars, the portion of the amendment herein involved being that which placed the position of captain of the fire department in salary schedule number 50. It is to be noted that that salary schedule was the same as that set forth in the ordinance of May 13, 1965, which the mayor returned to the council without his approval. The minutes of the council for its meeting of June 8, 1965, refer to the ordinance of May 13, 1965, which was returned by the mayor on May 24, 1965, without his approval and are in part as follows: ''Upon calling the roll, said ordinance was again adopted notwithstanding the objections of the Mayor, by the following vote: Ayes . . . (12); Noes . . . (3).''[2] No claim is made that Ordinance No. 130,266 was not timely adopted by the requisite number of votes of members of the city council.

[2]Section 29 of the city charter is as follows: ''Every ordinance which shall have been passed by the Council shall, before it becomes effective, be signed by the City Clerk or other person authorized by the Council to sign the same on its behalf, and be presented to the Mayor for his approval and for his signature if he approves it; if not, he shall endorse thereon the date of presentation to him and shall return it to the City Clerk with his objections in writing. The City Clerk shall endorse thereon the date of its return to him, and shall at the first meeting of the Council thereafter present the same, with the objections of the Mayor to that body. Thereupon the Council shall proceed to reconsider the passage of the ordinance. Upon such reconsideration it shall in all cases require the votes of two-thirds of the whole Council to pass such ordinance over the veto of the Mayor, but where two-thirds vote or more is required for the original ordinance, a three-fourths vote shall be required to pass it over the veto of the Mayor. The power of the Council to pass any ordinance over the veto of the Mayor shall continue for the period of not to exceed sixty (60) days after the objections of the Mayor are presented to the Council.''

In section 4 thereof it was provided that the ordinance should become operative on July 1, 1965.

On or before June 1, 1965, the mayor submitted to the city council a proposed budget for the fiscal year beginning July 1, 1965, and ending June 30, 1966.[3] Therein the provisions with respect to salaries in the fire department included the following: "Firemen . . . $33,225,710," but there was no designation of amounts with respect to specific positions within that general classification. In the supporting data which disclosed the basis for the proposed appropriation, the positions and salaries were set forth, including the position of "Captain Fire Department" with a monthly salary of $865-$966 but without a designation of a schedule number. The total number of firemen was given as 3,430 and the salary budget was stated to be $33,225,710.[4]

The city council thereafter modified the budget with respect to the fire department by changing the appropriation for the salaries of firemen from $33,225,710 to $33,559,574.[5] The defendants concede that the increase of $333,864 corresponded with the difference between the amount estimated to be required to pay fire captains expected to be employed for one year at schedule number 48 and that estimated to be required to pay such captains for one year pursuant to schedule number 50.

On June 21, 1965, the mayor returned the budget to the council with his modifications and his reasons therefor, a por-

---

[3] Under the provisions of section 344 of the city charter it is the duty of the mayor to recommend and submit to the council a budget for the next ensuing fiscal year on or before the first day of June of each year. The mayor is required to set forth in such proposed budget certain matters "in summary and in detail," including estimates of "the expenditures and appropriations necessary in his judgment for the support of the city government for the ensuing fiscal year."

[4] Section 343 of the city charter sets forth the means by which the mayor is to obtain the necessary budgetary information. That section is in pertinent part as follows: "At such time as the Mayor may prescribe, but not later than the first day of May of each year, each board or officer at the head of any department or branch of the city government other than those departments given control of their own funds, shall submit to the Mayor, with duplicates to the City Council and to the director of the Bureau of Budget and Efficiency, on forms and in the manner prescribed by the Mayor, or by ordinance, if forms are prescribed by ordinance, a detailed estimate of the money required for the next ensuing fiscal year for the proper conduct of the departments and offices under their respective control. . . . With the estimates shall be submitted such summaries, schedules and supporting data as may be prescribed by the Mayor or by ordinance, if forms are prescribed by ordinance. . . ."

[5] Section 348 of the city charter is as follows: "On or before the 20th day of June the Council, by majority vote, shall, by resolution, adopt the budget as proposed by the Mayor or as modified by the Council."

tion of his communication being as follows: "I cannot in good conscience allow this item to remain in the budget and am therefore vetoing the addition of $333,864 to the Fire Department. I am also requesting that the Council immediately take the appropriate action to rescind the extra raise for this one category of employees [captain, fire department] singled out for such favored expensive treatment. . . ." The minutes of the council for its meeting of June 24, 1965, show that a motion that the disapproval of the mayor of the increase in the salary appropriation for firemen "be not concurred in" failed to obtain the requisite number of votes, nine members of the council voting in favor of the motion and three voting against the motion.[6]

At the trial on October 14, 1965, the plaintiff called as a witness the City Administrative Officer, Dr. Piper. Portions of his testimony were: "If schedule 50 were paid [to fire department captains], and if there were no other adjustments made in accounts within the fire department and no further appropriation by the council, then the salary account for firemen would exceed the figure that is included in the budget. . . . By the amount of the fire captain's raise, the difference between schedule 48 and schedule 50, which is roughly $333,000 plus." In response to a question by counsel for the defendants as to whether his office ever allows any city department to overspend the allotted appropriations, Dr. Piper stated: "No, sir. There is an automatic cut-off on it in that the Controller will not pay the bill, and he has the copy of the expenditure program, and each expenditure is checked against this program."

As to the procedure in the event it appears that a salary appropriation will be exhausted before the end of the fiscal year, Dr. Piper testified: "The matter would be referred to us

[6]Section 349 of the city charter is in part as follows: ". . . If the Mayor shall disapprove of any increase, decrease, omission or insertion of any item or items of the budget by the Council, he may veto, restore or otherwise change any such item or items to the amount originally proposed by him or to any amount between that originally proposed by him and that adopted by the Council. The Mayor, however, shall have no power to change any description or limitation made applicable to an item by the Council except to veto such change or to restore the description or limitation to the condition originally proposed by him. Upon completion of such changes as he determines proper, the Mayor shall return the budget to the Council with a statement of his action. Within three (3) days thereafter the Council may overcome such action of the Mayor relative to any item or items of the budget by a two-thirds vote of all its members, whereupon the budget shall be signed by the City Clerk and shall become effective."

for a recommendation back to either the department or to the city council. We would examine all of the accounts of that department, and if there is a surplus in any account and we could transfer the amount needed from one account to another, we would do so. . . . That would be customary. The department could, on its own, reduce personnel, leave positions vacant to make up the difference in expenditures; or, if they choose to keep the personnel on the job in the same numbers and at the same rates, they could request an additional or supplemental appropriation from the city council. This would require an action by the council and approval by the mayor to appropriate funds from the unappropriated balance to the salary account of that particular department."

The plaintiff states that his challenge is not as to the manner of the adoption of Ordinance No. 130,266 but is directed to the manner of its application. He contends that the provision for the increase in salary for the position of captain of the fire department did not become effective because the mayor eliminated the amount of $333,864 which the city council had added to the appropriation for salaries of firemen. For reasons which will be stated, that contention is untenable.

██ The power to determine the salaries of firemen is placed by the charter in the council.[7] That power is not restricted by the charter so that it can only be exercised as a part of the process of adopting the budget. Unlike the situation in *Sullivan* v. *McKinley*, 14 Cal.2d 113 [92 P.2d 892], the charter does not embody any provision governing the time within which the matter of salary increases must be determined for a particular fiscal year. ██ The item in the budget, as adopted, with respect to the salaries of firemen was in the amount of $33,225,710 and contained no designation of specific rates of compensation or of specific amounts to be used in payment of persons holding particular positions in the department. Consequently, since Ordinance No. 130,266 had been effectively adopted in accordance with the applicable provisions of the charter, there was no impropriety in the payment of the increased salary for the position of captain of

---

[7]A portion of section 33 of the city charter is as follows: "It [the council] shall fix the salaries of all officers and employees except as otherwise provided in this charter; provided, however, that no ordinance fixing the salary of any position shall be adopted except by a vote of two-thirds of the whole Council, unless such ordinance shall first have been recommended for adoption by a committee composed of the Mayor, Director of the Bureau of Budget and Efficiency and the Chairman of the Finance Committee of the Council."

the fire department out of the general appropriation in the budget for salaries of firemen.

 It is, of course, true that the failure of the council to overcome the action of the mayor in vetoing the addition of $333,864 to the appropriation for salaries of firemen left unresolved the problem of the probable insufficiency of the appropriation actually made. But, as noted in the testimony of the City Administrative Officer, ways were open for the subsequent resolution of that problem in harmony with the provisions of the charter. (Charter, §§ 354, 354.1 and 355.) Until the taking of such appropriate action the total expenditure of money for salaries of firemen was limited to the amount set forth in the budget as adopted.[8] The unsolved problem remained in the hands of those entrusted by the charter with the exercise of judgment with respect thereto and did not afford a basis for judicial intervention. (See *Muchenberger* v. *City of Santa Monica*, 206 Cal. 635, 646 [275 P. 803].)

 Since there was involved no illegal expenditure of funds of the city (Code Civ. Proc., § 526a), the trial court properly determined that the plaintiff was not entitled to the relief which he sought.

The judgment is affirmed.

Cobey, J., and Moss, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 21, 1968.

---

[8]Section 369 of the charter is as follows: "No department, bureau, division, or office of the city government shall make expenditures or incur liabilities in excess of the amount appropriated therefor."