[Sac. No. 508. In Bank.—April 30, 1900.]

ALYS L. KEMBLE, Respondent, v. J. S. McPHAILL et al., Constituting the Board of Education of Tulare County, Appellants.

SCHOOL LAW—COUNTY CERTIFICATES WITHOUT EXAMINATION—PERMISSIVE STATUTE—MANDAMUS.—Section 1775 of the Political Code providing that "the board may also, without examination, grant county certificates of either the grammar or the primary grade to holders of life diplomas of other states," etc., "and county certificates of the high school grade to holders of California State University diplomas when recommended by the faculty of the university," is not mandatory, but permissive and discretionary; and *mandamus* will not lie to compel a county board of education to issue a county certificate, without an examination, to anyone falling within the terms of that section.

ID.—STATUTORY CONSTRUCTION—"MAY," WHEN MANDATORY, AND WHEN PERMISSIVE.—"May" in a statute is to be construed as mandatory only when it can be seen that the legislative intent was to impose a duty, and that a mandatory construction is necessary to give effect to the clear policy and intent of the legislature, and that the public is interested, and the public or third persons have a claim *de jure* to have the power exercised. But where there is nothing in the connection of the language, or in the sense and policy of the provision, to require an unusual interpretation, its use is merely permissive and discretionary.

APPEAL from a judgment of the Superior Court of Tulare County. Wheaton A. Gray, Judge.

The facts are stated in the opinion of the court.

F. B. Howard, for Appellants.

"May" in a statute is to be construed permissively whenever it can be without compulsion of the context. (14 Am. & Eng. Ency. of Law, 78; *Hayes v. County of Los Angeles*, 99 Cal. 80; *Santa Cruz etc. Pav. Co. v. Heaton*, 105 Cal. 165; *Minor v. Mechanics' Bank*, 1 Pet. 64; *Thompson v. Carroll*, 22 How. 434; *State v. Neuner*, 49 Conn. 233.)

E. T. Cosper, and E. W. Holland, for Respondent.

The public are interested in the qualifications of the teachers of the public schools. "Where power is given to public officers, whenever the public interest or individual rights call for its exercise, the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his." (*Supervisors v. United States,* 4 Wall. 436.) Where persons or the public have an interest in having the act done by a public body, "may" in such a statute means "must." (*Hayes v. County of Los Angeles,* 99 Cal. 80; *People v. Supervisors of Livingston Co.,* 68 N. Y. 119; *Rex v. Barlow,* 2 Salk. 609; *Phelps v. Hawley,* 52 N. Y. 27; *People v. Supervisors of Otsego Co.,* 51 N. Y. 401; *Estate of Ballentine,* 45 Cal. 696.) Appellant's construction of section 1775 cannot prevail for the reason that it would have the effect of literally construing the statute out of existence, and would give to local boards of education of the various counties the power to deny certificates to those whose qualifications have been passed upon by the faculty of the State University, a higher authority in our educational system.

GAROUTTE, J.—This is an appeal from the judgment in an action brought in the superior court of Tulare county by respondent to obtain a writ of mandate against the appellants, composing the board of education of said county, to compel them as such board to issue to respondent a teacher's certificate of the high school grade. The basis of her application is found in section 1775 of the Political Code of this state, which in part reads as follows: "The board may also, without examination, grant county certificates of either the grammar or the primary grade to the holders of life diplomas of other states; Nevada, Oregon, and Washington state educational diplomas; San Francisco normal class diplomas, when recommended by the superintendent of public schools of said city; California State University diplomas, when recommended by the faculty of the university; state normal diplomas of other states; grammar grade certificates of any county or city and county of California; and county certificates of the high school grade to holders of California State University diplomas, when recommended by the faculty of the university."

The respondent is the holder of a California State University diploma, and recommended by the faculty of the university, and it is contended by her that the word "may" in the aforesaid provision of law should be construed as "must," and for that reason the provision is mandatory, and, upon application being made to a county board of education by the holder of any diploma or certificate mentioned therein, it becomes the duty of such board to issue a certificate to the applicant. In other words, it is contended that the county board of education has no discretion in the matter of issuing certificates in any of the cases mentioned in that portion of section 1775 above quoted.

In speaking as to the question of construction of the word "may" when used in a statute, it is said in the American and English Encyclopedia of Law, volume 14, page 78: "It has always been construed 'must' or 'shall' whenever it can be seen that the legislative intent was to impose a duty, and not simply a privilege or discretionary power, and where the public is interested, and the public or third persons have a claim *de jure* to have the power exercised. But it is only where it is necessary to give effect to the clear policy and intent of the legislature that it can be construed in a mandatory sense, and, where there is nothing in the connection of the language or in the sense and policy of the provision to require an unusual interpretation, its use is merely permissive and discretionary." Tested by the foregoing rule, we see nothing whatever in this act to demand any unusual interpretation of the word. We do not see that it is at all necessary, in order to give effect to the clear policy and intention of the legislature in enacting this statute, that it should be construed in a mandatory sense. We cannot see that the legislative intent was to impose a duty upon the board of education of granting certificates under the aforesaid circumstances, but it is rather made quite plain that it was the intention of the legislature to extend to the board a privilege or discretionary power as to the issuance of this class of certificates. Neither do we see that the public is interested, or has any claim in the matter, or that third persons have a claim *de jure* to demand an exercise of the power.

Words similar to that here under consideration, when used in a statute, should be given their usual and ordinary meaning, un-

less in exceptional cases.  Ordinarily, there is a great difference
in the meaning of the words "may" and "must," and this statute
will have effect, and a broad effect, by giving this word "may" its
ordinary and common meaning.  As said in *Robinson v. South-
ern Pac. Co.*, 105 Cal. 545: "We see nothing here demanding the
construction claimed.  It is not plainly manifest that the legis-
lature so intended.  It is not manifest at all.  The clause is
full of meaning reading it as it appears to the eye, and is en-
tirely consistent with other portions of the section.  If we should
interpret 'and' as 'or,' an entirely different meaning would be
given the provision.  This would be judicial legislation pure and
simple."

Among other matters, section 1771 of the Political Code, re-
ferring to the powers of county boards of education, declares in
subdivision 3: "To examine applicants and to prescribe a stand-
ard of proficiency which will entitle the person examined to a
certificate, and to grant certificates of three grades," etc.  Un-
der this provision of the law, county boards of education not
only have the power to fix the percentage of proficiency justify-
ing the issuance of certificates to applicants to teach, but as to
certain classes of certificates they have the power to enumerate
the particular branches of learning upon which the applicants
must be examined.  It is thus apparent that not only the stand-
ard of proficiency may be different in various counties of this
state, but the various branches upon which the applicants are
examined may also be different.  If the word "may" in this pro-
vision of the statute be construed as mandatory, it will neces-
sarily follow that the holder of a certificate issued by the board
of education of one county in the state, upon presentation to a
board of education of any other county, could demand the is-
suance of a certificate to him in that county without further
examination.  The obvious result of this would be that the par-
ticular county in the state fixing the lowest standard of profi-
ciency, and the least number of branches of study upon which
to be examined, would absolutely fix the standard in all the
other counties of the state.  For, if a certificate issued to the
applicant in that county is *ex necessitate* good upon presentation
in every other county in the state, then the practical operation
of the law would simply be that the board of education of that
county would enjoy the privilege and be burdened with the la-

bor of examining all applicants in the state who desired to follow the profession of teaching. In other words, that county would be the Gretna Green for all parties in the state desiring to enter the profession of pedagogy. It is perfectly obvious that the result would be that the duties of all the other boards of education in the various counties, under this construction of the law, would be simply ministerial—namely, granting certificates upon the presentation of other certificates from this aforesaid most lenient and liberal board of education. Such certainly is not the policy of the law, and certainly was not the intent of the legislature.

By virtue of section 1503 of the Political Code, the county boards of education are required to issue certificates to graduates of the various state normal schools of this state. In this provision of law the legislature very properly used the verb "shall." As held in *Mitchell v. Winnek,* 117 Cal. 520, that is a mandatory provision; yet it is now sought by the construction here contended for, under the very general provisions of the aforesaid section 1775 of the Political Code, to place all the state normal schools of the United States in the same category with the state normal schools of this state; for diplomas issued by state normal schools of other states possess the same verity and value that the diploma has which is presented by this respondent. This would seem to be hardly fair to our own state educational institutions, and, in the absence of a manifest intention that such should be the effect of this law, we certainly are not inclined to so hold. We also find life diplomas issued by other states of the Union and also Nevada, Oregon, and Washington state educational diplomas, standing upon the same footing and possessing the same value as life diplomas and educational diplomas issued under the law of this state. Such liberality upon the part of our legislature in extending favors to the teachers of other states will not be declared, in the absence of a plain intention to that effect upon the part of that body.

For the foregoing reasons we conclude that the language of section 1775 of the Political Code is not mandatory, but plainly permissive and discretionary, and for that reason it is ordered that the judgment be reversed and the cause remanded, with directions that the proceedings be dismissed.

Temple, J., McFarland, J., and Van Dyke, J., concurred.