[Civ. No. 7300. Fourth Dist. Sept. 21, 1964.]

ERWIN F. ANDERSON et al., Plaintiffs and Appellants, v. THE BOARD OF SUPERVISORS OF SAN DIEGO COUNTY et al., Defendants and Respondents.

Wencke, Carlson & Kuykendall and Paul Hofflund for Plaintiffs and Appellants.

Bertram McLees, Jr., County Counsel, Robert G. Berrey, Assistant County Counsel, and Lawrence Kapiloff, Deputy County Counsel, for Defendants and Respondents.

McCABE, J. pro tem.*—Appellants, classified civil service employees of the County of San Diego, on behalf of themselves and others similarly situated, petitioned the superior court for a writ of mandate to require the respondent Board of Supervisors of the County of San Diego to comply with section 40 of the charter of San Diego County. From the judgment denying the mandate this appeal has been filed.

Included in the original charter of the county, adopted in 1932, was section 40, chapter 10 article VIII, which reads as follows: "In fixing compensation, the Board of Supervisors shall at least annually, by ordinance, provide in each instance for the payment of not less than the prevailing or general current rate of compensation or wages paid by private employers in the County of San Diego for similar quality or quantity of service, in case such prevailing compensation or wages can be ascertained."

Effective July 1, 1935, the charter was amended to incorporate civil service provisions. In so amending and adding civil service provisions, section 79, chapter 10, article XVII, became part of the charter: "The Commission shall prescribe, amend and enforce rules for the Classified Service, which shall have the force and effect of law; shall keep minutes of its proceedings and records of its examinations and shall, as a Board or through a single Commissioner, make investigations concerning the enforcement and effect of this article and of the rules and efficiency of the service. Such rules shall provide:

"(a) For the standardization and classification of all positions in the classified service. This classification into groups and subdivisions shall be based upon and graded according to the duties and responsibilities of such positions, and shall be so arranged as to permit and encourage the filling of the higher grades through transfers and promotions. All salaries of employees in the classified service shall be uniform for like service in each grade, as the same shall be classified and standardized by the Commission. No such standardization or classification of salaries shall become final until approved by the Board of Supervisors in the annual appropriation ordinance and no such salaries shall be paid except in accordance with such standardization and classification. The Board of Supervisors shall not approve of any such standardization or classification of salaries until at least thirty days

---

*Assigned by Chairman of Judicial Council.

after it shall have been submitted to the Board of Supervisors by the Commission, and shall have been considered at not less than two meetings of said Board. For the purpose of making the first standardization and classification, the Board of Supervisors shall, upon request of the Commission, furnish to the Commission such assistance as may be necessary."

Fundamentally petitioners assert that section 79 does not amend or abridge the function of the board of supervisors as delineated in section 40 and the duty cannot be delegated.

■ The "functions of the civil service commission are administrative, ministerial and executive." (*Cornell* v. *Harris*, 15 Cal.App.2d 144, 153 [59 P.2d 570].) The mandatory words which are a part of section 40 have not been changed by section 79. The legislative authority to determine salaries rests solely upon the respondent board of supervisors. This authority it may not, and did not, delegate.

The procedure followed by the respondent board of supervisors was similar to that followed in Fresno and the City and County of San Francisco. (See *Goodrich* v. *City of Fresno*, 74 Cal.App.2d 31 [167 P.2d 784], and *City & County of San Francisco* v. *Boyd*, 22 Cal.2d 685 [140 P.2d 666].) The procedures followed in each of the above named counties were specifically provided for in the county charter.

The procedure followed was that prior to respondent board passing the 1961-62 salary ordinance, the respondent civil service commission made contacts with various departments, obtained suggestions, took part in the survey which was carried on by four governmental departments, and analyzed the data. All this data and information was transmitted to the Griffenhagen-Kroeger Company, which had been employed by the county. This company had as its principal business analysis of data. This company then submitted its recommendations to the respondent civil service commission which in turn submitted all of the data, information, the Griffenhagen-Kroeger recommendations and made its recommendations to the respondent board of supervisors. After consideration, the respondent board passed the salary ordinance.

"The courts will not interfere with the board's determination of whether proposed rates of compensation are in accord with generally prevailing rates unless the 'action is fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law.' (*City & County of San Francisco* v. *Boyd, supra,* 22 Cal.2d 685, 690.)" (*Walker*

v. *County of Los Angeles,* 55 Cal.2d 626, 639 [12 Cal.Rptr. 671, 361 P.2d 247].)

In the *Walker* case the board, because of an evenly split vote, could make no determination of the mandatory factors at the time it adopted a salary ordinance and as required by its ordinance. Because of this impasse, the board passed an ordinance adopting a previous year's schedule of salary. The Supreme Court stated this was improper and the board had failed to comply with the charter mandate. In so doing, the court said, at page 635: "Here section 47 provides for a specific test with which the salary ordinance adopted by the board must comply. While it does not expressly provide that it shall first make a finding on the prevailing wage question or hold hearings in aid thereof before passing an ordinance fixing compensation for civil service employees, the clear implication is that such a determination must be made in some fashion either before or at the time of adoption of the salary ordinance."

In the *Walker* decision no reference is made to any section of the charter of Los Angeles County similar to section 79 of the San Diego County charter. In the *Walker* case the board had before it a salary survey and a recommendation by the chief administrative officer which can be characterized as analogous to, yet more limited than, the data, information, surveys and recommendations which the respondent board had before it when it passed the 1961-62 salary ordinance here in question. In the *Walker* case the Supreme Court did not criticize the source of the data, surveys and recommendations which the board had before it, but only that the board made no finding of prevailing wages, etc.

There is no case in California in which there has been set forth any formula by which "prevailing wages" may be determined as a definite figure.

Section 1773, Labor Code, and section 16003 of title 8, California Administrative Code, cited to us by petitioners as definitive of prevailing wage, or prevailing wage rate, is helpful to a body which has the obligation to determine it, but, again, these code sections require surveys of or consideration of factors in the labor market. There is flexibility in these code sections. Both of these code sections are under the "Public Works" division of the respective codes. It is not for the court to determine the prevailing wage, but this is a matter for the respondent board of supervisors. It

was so held in *Carrier* v. *Robbins,* 112 Cal.App.2d 32 [245 P.2d 676].

In the charter of the respondent county of San Diego there is a requirement for the classification, standardization of employment and compensation. The respondent civil service commission classified the various employments with provisions of the various steps of compensation. As a result, an employee of the County of San Diego could progress from a lower level of pay to a higher one by remaining in the governmental employment for stated intervals. The step procedure would be comforting and encouraging to the employee with less turnover of personnel and a security not necessarily present in private employment.

Certainly with no standard or formula as to "prevailing wage," the respondent board had many factors to consider aside from a dollar amount of compensation. So commonplace now that they are considered part of a pay scale or salary or compensation for work, are "fringe benefits." This latter term is nebulous and without fine definition, yet it is a part of "prevailing wage". If anybody charged with the duty of determining "prevailing wage" had to equate and evaluate to an exact degree the variable factors including "fringe benefits," the obligation would be impossible of performance.

Under present social and economic conditions, it is an irrefragable tenet that in determining a prevailing wage there must be a pliancy unencumbered by an inexorable mandate. See *Gowanlock* v. *Turner,* 42 Cal.2d 296 [267 P.2d 310]; *Walker* v. *County of Los Angeles, supra; Carrier* v. *Robbins, supra,* 112 Cal.App.2d 32.

"While the charter provisions must be complied with, considerable discretion remains with the board of supervisors with respect to similarity of work and various conditions. [Case cited.] While the board may be compelled to comply with the charter it may not be compelled to act in a particular way, especially in disregard of other elements in the charter provisions." (*Civil Service Com.* v. *Superior Court,* 102 Cal. App.2d 854, 856 [228 P.2d 321].)

Petitioners argue that in several positions of employment the respondent board had no evidence before it to determine prevailing wage or comparable positions. By this assertion, petitioners are requesting this court, as they did the trial court, to find as a matter of law what the prevailing wage was for the classified position of employment and to find that the

respondent board acted arbitrarily, capriciously, abused its discretion and acted fraudulently. A review of the entire salary ordinance reflects the respondent board provided for a range of compensation and a relationship of various classes of employment having before it all of the evidence, surveys, testimony and data described above. Obviously the respondent board did not act arbitrarily, capriciously, fraudulently or abuse its discretion.

There being no express requirement as to how the prevailing rate of compensation is to be determined, the respondent board properly depended upon surveys, recommendations, data and testimony. It was the duty of the respondent board, which duty it performed, to give weight to figures, recommendations, and information data in making its determination. These findings were incorporated in the 1961-62 salary ordinance.

Judgment affirmed.

Griffin, P. J., and Brown (Gerald), J., concurred.

A petition for a rehearing was denied October 9, 1964, and appellants' petition for a hearing by the Supreme Court was denied November 19, 1964.