[Civ. No. 27031. First Dist., Div. Four. Aug. 8, 1969.]

SAN FRANCISCO CHAMBER OF COMMERCE et al., Plaintiffs and Appellants, v. CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents; CIVIL SERVICE ASSOCIATION OF SAN FRANCISCO et al., Movants and Appellants.

Long & Levit and Victor B. Levit for Plaintiffs and Appellants.

Neyhart, Grodin & Beeson, Peter Adomeit, Levy & Van Bourg and Victor J. Van Bourg for Movants and Appellants.

Thomas M. O'Connor, City Attorney, Michael C. Killelea and George E. Baglin, Deputy City Attorneys, for Defendants and Respondents.

DEVINE, P. J.—Appellants are taxpayers in the City and County of San Francisco. They sought injunction, writ of mandate and declaratory judgment in the superior court, the essence of their combined actions and special proceeding being a challenge to the validity of a certain salary ordinance. The ordinance fixes the salaries for the 1969-1970 fiscal year of "miscellaneous" employees; that is, all or nearly all except policemen, firemen, craft employees and streetcar and bus operators. The court denied the application for temporary injunction and for writ of mandate and declared the ordinance to be valid. Appeal followed.

Section 151 of the San Francisco Charter (Stats. 1950, ch. 4, pp. 46-49) provides that the board of supervisors shall have the power and the duty to fix salaries by ordinance and that compensations shall be in accord with the generally prevailing rates of wages for like service and working conditions in private employment or in other comparable governmental organizations in this state. The charter provides that the Civil Service Commission (hereinafter "Commission") shall recommend schedules of compensation to the board of supervisors, solely on the basis of facts and data obtained in a comprehensive investigation and survey of wages in private employment and other governmental agencies.

The board of supervisors may approve, amend or reject the schedule of compensations proposed by the Commission, but in

case of amendment, only after giving the Commission the data considered as warranting the amendment, and receiving a report back from the Commission.

When the schedule for the fiscal year 1969-1970 was received, on January 31, 1969, the board of supervisors, through its Legislative and Personnel Committee, held extensive hearings. The Commission's schedules would have brought about an increase of 7½ percent or more for some employees, 5 percent for others, 2½ percent for others, and no increase at all for some. The board having transmitted data obtained by it (other than that supplied by the Commission) to the Commission, amended the proposed schedule by enacting the ordinance with a 5 percent across-the-board increase from the 1968-1969 rates. The ordinance as enacted *reduced* the total amount which would have been required from the taxpayers had the Civil Service Commission's schedule been adopted by $1,705,618.

The ordinance was passed unanimously by the board of supervisors and was signed by the mayor on March 15, 1969. An earnest, if not fervent, entreaty to the board to adopt the ordinance was made by its Legislative and Personnel Committee, which reported its exhaustive study of the data submitted by the Civil Service Commission, its realization that some inconsistencies may occur, and its conviction that its recommendations represent the best possible solution of an admittedly complex problem. The committee reported that it had reviewed the schedule, class by class. It had taken cognizance of increase in the cost of living.

On May 12, 1969, the present lawsuit was filed. Judgment by the superior court was made on June 9, 1969. We advanced the case for hearing on appeal because the new salaries were to become effective July 1, 1969.

The main point made by appellants is this: the salary ordinance is invalid in part because it sets rates which are so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law. This is an allegation contained in the pleading, and it is a necessary one, because it was held in *City & County of San Francisco* v. *Boyd,* 22 Cal.2d 685, 690 [140 P.2d 666], that the courts will not interfere with the rate-making authority in the matter of setting salaries at prevailing rates unless the abuse is as great as that described in the allegation (or unless there is fraud, which is not alleged in the present case).

The trial judge expressly found that not any of the rates is so palpably unreasonable and arbitrary as to indicate abuse of discretion.

Appellants do not plead what the prevailing wages are for any classification except by making reference to what the Civil Service Commission found; nor did appellants desire to present any evidence (this appears by stipulation to an amendment to the judgment) as to prevailing rates other than the Commission's schedule.

Appellants rely on the schedule of the Civil Service Commission as showing that before the 5 percent raise, there were 66 classifications of employees who were receiving pay from 10 percent to 36 percent higher than prevailing rates in private employment or other governmental agencies in the state; that these classifications comprise 3,458 employees or about 23.8 percent of those covered by the ordinance. Under the ordinance, appellants say, these employees will receive from 15 percent to 41 percent over prevailing rates. In addition, about 130 other classifications received from 1 percent to 9 percent higher than prevailing rates; there are 2,333 employees here, or 16 percent of the total. Under the ordinance they will receive from 6 percent to 14 percent above prevailing wages. Besides, some employees for whose places there is no data for comparison are geared to the ones mentioned herein, so that they, too, will receive excessive wages, say appellants.

■ Although the charter requires that the Commission shall recommend schedules of compensation solely on the basis of its survey of wages, it does not purport to bind the supervisors to ratify the schedule proposed by the Commission by enacting it into ordinance. Legislative discretion is contemplated. (*Collins* v. *City & County of San Francisco,* 112 Cal. App.2d 719 [247 P.2d 362].)

■ At the outset of appellate review, we find ourselves without precedent to work with. Counsel tell us that no case is known (even in the nation) in which taxpayers have succeeded in preventing payment of municipal employees' salaries on the ground that they exceeded prevailing wages. Nor, indeed, have we been cited any cases in which municipal employees have been successful in challenging the discretionary acts of the legislative body. The employees did succeed in *Walker* v. *County of Los Angeles,* 55 Cal.2d 626 [12 Cal.Rptr. 671, 361 P.2d 247], in compelling the county to follow charter requirements in ascertaining prevailing wages

instead of simply continuing the previous year's wage scale; and in *Sanders* v. *City of Los Angeles*, 252 Cal.App.2d 488 [60 Cal.Rptr. 539], in effecting a correction when the chief administrative officer had given a deceptive report to a committee of the city council. But these cases did not have to do with the legislative discretion itself.

We do find several cases in which the courts have expressed the principle that the determining of prevailing wage rates is primarily for the legislative branch; *Collins* v. *City & County of San Francisco*, 112 Cal.App.2d 719, 730 [247 P.2d 362]; *City & County of San Francisco* v. *Boyd*, 22 Cal.2d 685, 689 [140 P.2d 666]; *Carrier* v. *Robbins*, 112 Cal.App.2d 32, 35 [245 P.2d 676]; *Spencer* v. *City of Alhambra*, 44 Cal.App.2d 75, 77 [111 P.2d 910]; *Banks* v. *Civil Service Com.*, 10 Cal.2d 435 [74 P.2d 741]; *Anderson* v. *Board of Supervisors*, 229 Cal.App.2d 796 [40 Cal.Rptr. 541].

Appellants state that although they cannot say at just what percentage the wage becomes so arbitrarily excessive as to amount to an abuse of discretion, such as was suggested would warrant judicial intervention in the *Boyd* case, surely the point has been reached by a large number of classifications. They point out that in the *Boyd* case, the excess which Boyd, the city controller, declined to pay until he was mandated to do so, was but 4.3 percent higher than the highest generally prevailing wage; that even so, the Supreme Court was divided four to three; and that the rates at issue now are far more disparate with the prevailing ones than was the case in *Boyd*.

We do not regard a mere comparison of percentages of some salaries to be determinative of the question whether the charter has been violated by the ordinance. Other factors which the trial judge was entitled to take into consideration, as are we, are these:

1. It is conceded that the compensations of some 14 classifications were rated by the Civil Service Commission as *below* the prevailing wages. Of course, the number of classifications in this category is much lower than the 66; but there was no showing of the number of employees affected or of the total result in amount of dollars effected by the disparities one way and the other.

2. An analysis of the subject classifications, as well as their mere enumeration, must be made, and was made by respondents' amended answer which was before the trial judge. In a mandamus proceeding, allegations in the answer

which are not countervailed by pleading or proof are to be taken as true. (*Kimberlin* v. *Los Angeles City High School Dist.*, 115 Cal.App.2d 459, 464 [252 P.2d 344] ; 3 Witkin, Cal. Procedure (1954) § 65, p. 2558.)

We shall give a few examples of the explanation made by the respondents, taking a few of the 66 classifications :

a) The one in which the excess is greatest, being 36 percent in excess of prevailing wages (before the 5 percent blanket increase) is that of school community relations assistant. We are not told how many employees come within this classification. The salary range is not a particularly high one, $525-$638. This employment, because of its relation to the schools, is subject in any event to action by the board of education. (*Esberg* v. *Badaracco*, 202 Cal. 110 [259 P. 730].)

b) The position of "law clerk," which includes employees in the office of the county clerk, has salaries which, as the board of supervisors was informed and as we see them, were quite reasonable compared with those of law clerks in the Court of Appeal and of the municipal court, in both of which courts salaries are set by the Legislature. The Legislature has granted cost-of-living increases, as of July 1, 1969, of 5½ percent.

c) In four of the classifications it was necessary for the board of supervisors to fix salaries at certain amounts so that craft employees, whose compensations are determined by collective bargaining agreements, would not be receiving greater remuneration than their supervisors.

d) Seven of the 66 classifications are, like that mentioned in the first example, related to positions in the San Francsico Unified School District.

e) The salary of chief of investments has been so unattractively low that, following an examination, three persons who became eligible refused the position.

3. Respondents point out that according to the survey made by the Monthly Labor Review of the United States Department of Labor, Bureau of Labor Statistics, April 1969, the cost of living in the San Francisco area is the highest of any listed area in the continental United States, and is exceeded only by that of the Honolulu area.

4. The schedule prepared by the Commission, having been submitted on January 1, 1969, could not, of course, include comparisons with salaries or wages as they might be increased

in later months. One of the most important examples of such later increases is that about 183,000 state employees received a 5½ percent increase since July 1, 1969. Also, it is to be observed that 60,000 employees of the County of Los Angeles received increases of 2½ to 16½ percent as of July 1, 1969.

5. Respondents point out that among the 66 classifications there are 13 the salaries of which run from $465 per month for a kitchen helper to a top (this as the final step in annual increments) of $757 for an electroencephalograph technician, and respondents say that these salaries could not have been fixed much lower and still have permitted a family dependent thereon to maintain a minimal standard of living.

Appellants' rejoinder to this, that in some families there may be more than one wage earner, need not have been persuasive to the board of supervisors, or to the trial judge. In many cases, one wage earner must supply a family with sustenance. Just what should be done about fixing salaries in order to provide a decent living at these levels of compensation is essentially a matter for the legislative body.

6. At this point, we take note of the contentions of two organizations which sought to intervene in the action in the superior court. They are San Francisco City and County Employees Union, Local 400, and the Civil Service Association, an organization of municipal employees. The petition to intervene was denied, and these organizations have appealed. At oral argument, their attorneys stated that they did not wish to press their appeals if to do so would embarrass the progress of the principal appeal, that resisted by respondents. Counsel for the proposed interveners were permitted to argue as amici curiae in both the superior court and this court. If the action of the board of supervisors be declared invalid and the matter remanded for further action, interveners wish to present evidence that in many instances the percentages are not as stated in the report of the Civil Service Commission, and that in many of the categories there are no proper comparables. For example, the prospective interveners would propose to show, if further litigation ensued, that many of the positions affected by this lawsuit are those of employees of the hospitals or of Laguna Honda Home for the indigent aged, and that a percentage of dollar amounts only is misleading. They say that evidence of comparative "patient load" would

show that the wages set in the ordinance are not only not excessive but in some cases would be shown to be deficient. It can be foreseen, therefore, that whether the associations or individual employees would appear, lengthy litigation would be in prospect.

Although judicial action may upon a strong showing be permissible to curb a clear-cut abuse of legislative discretion in the matter of determining the wages of municipal employees, we conclude, in view of the foregoing considerations, that this is not a case which warrants judicial intervention.

There are two lesser points made by appellants. They state that the journal of the board of supervisors shows that the supervisors considered salaries of policemen and firemen (which are fixed under other provisions of the charter and according to entirely different tests) in allowing the 5 percent across-the-board increase to the miscellaneous employees, and that this was improper. As we read it, the journal simply reports the matter of increases for the police and fire departments as well as for the craft classes and for municipal railway operators. The excerpt from the journal does not say, and we do not draw the inference therefrom, that these items were related in the supervisors' action to the subject matter of the case at hand.

Appellants complain that a declaration made by William H. Smith, Executive Vice President of Federated Employers of the Bay Area, was not admitted in evidence. This declaration simply states that in certain cities and governmental units the interquartile range of data is used, by which the lowest and highest 25 percent of salaries are eliminated in determining the prevailing rate, that this is a proper method, and that any method which eliminates the lowest 40 percent and the highest 20 percent of salaries for any job classification artificially increases the wage figure.

But a declaration by the executive officer of the Civil Service Commission was admitted (no doubt in connection with the petition for temporary injunction, on the hearing of which affidavits or declarations are considered (Code Civ. Proc., § 527)), in which it is stated that of the 66 classifications in question the 40th to the 80th percentiles were used in but 12, and this because "it was determined that the resulting minima and maxima most closely approximated the range resulting from averaging the lowest and highest private salaries or wages paid." The charter itself prescribes no

formula which the Commission must use.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied September 4, 1969, and the petition of plaintiffs and appellants for a hearing by the Supreme Court was denied October 1, 1969. Sullivan, J., did not participate therein.