[Civ. No. 28520. First Dist., Div. One. Feb. 14, 1973.]

ALAMEDA COUNTY EMPLOYEES' ASSOCIATION et al.,
Plaintiffs and Appellants, v.
COUNTY OF ALAMEDA et al., Defendants and Respondents.

**COUNSEL**

Brundage, Neyhart, Grodin & Beeson, Peter Adcmeit, Joseph R. Grodin, Mohi, Morales & Glasman and Frank C. Morales for Plaintiffs and Appellants.

Richard J. Moore, County Counsel, James E. Jefferis, Assistant County Counsel, and Douglas Hickling, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**MOLINARI, P. J.** — This is an appeal by petitioners Alameda County Employees' Association, Saundra V. Bainer and Eli Muela from a judgment denying their petition for a writ of mandate directed to the County of Alameda.

The petition was filed by petitioners on their own behalf and on behalf of the members of the association who were employed by the County of Alameda in a variety of specified job classifications. We shall hereafter refer to the petitioners jointly as "petitioner." The petition was partly concerned with the nature of the obligations imposed by sections 36 and 48 of the Charter of Alameda County on the Civil Service Commission and the Board of Supervisors of Alameda County respecting the establishment of salaries for employees within the specified classifications. Section 36 provides, in relevant part: "It shall be the duty of the Civil Service Commission: . . . (e) To recommend to the Board of Supervisors at least sixty days prior to the end of each fiscal year a rate of pay for each class in the classified civil service based upon a comparison of salaries being paid for like service and working conditions in other comparable places of public and private employment in order that all salaries shall be uniform for like service in each class of the classified civil service." Section 48 provides: "In fixing compensation, the Board of Supervisors shall in each instance provide a salary or wage at least equal to the prevailing salary or wage, for the same quality of service rendered to public employers and private persons, firms or corporations under a similar employment, in case such prevailing salary or wage can be ascertained."

In its first cause of action petitioner alleged that the civil service commission (hereinafter "the Commission") recommended, and the board of supervisors (hereinafter "the Board") adopted, a salary ordinance which deprived the employees, for the first half of the fiscal year, of the rate of pay to which they were entitled under the charter. The fiscal year ran from July 1, 1969, through June 30, 1970. The salary ordinance provided a 2½ percent increase for certain classifications as of January 1, 1970. Petitioner alleged that the prevailing wage for the entire fiscal year was no less than the wage afforded as of January 1, 1970.

In its second cause of action petitioner alleged that the salary ordinance deprived some classifications of employees of the rate of pay to which they were entitled for the entire fiscal year. It alleged that as to these classifications the rate which was afforded as of January, by virtue of the 2½ percent increase, remained below the prevailing wage.

In its third cause of action petitioner alleged that the Commission and the Board acted arbitrarily, unreasonably, and in violation of the aforementioned sections of the charter in adopting the salary ordinance for the fiscal year 1969-1970; that the Commission and the Board utilized a salary survey containing stale data in that the information pertaining to 10 out of 12 jurisdictions was one year old; that these agencies failed to consider

the amount by which salaries had lagged behind those in other jurisdictions during the preceding year and the effect which inflation had and would have on the salaries set; and that the action of these agencies in deferring the 2½ percent increase until January, on the basis that there would be some upward salary movement in nearby jurisdictions, was arbitrary and unreasonable in that only one such jurisdiction had a fiscal year commencing in January.

Petitioner also alleged in the third cause of action that the Commission and the Board had failed to consider that some employees perform work which is similar to that performed by others and yet receive a lower rate of pay; that the Commission and the Board abandoned their procedure of arriving at the prevailing wage by an averaging process and offered no reasonable explanation for their recommendations and determinations; that the salary ordinance was determined and influenced by the figures previously set forth in the county's preliminary budget; and that neither the Commission nor the Board made any determination of the prevailing wage.

Petitioner's fourth cause of action was concerned with the nature of the obligations imposed on the Commission and the Board by sections 3505 and 3505.2 of the Government Code.[1]

During the period of time pertinent to the instant case, section 3505 provided as follows: "The governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501, and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action. [¶] 'Meet and confer in good faith' means that a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation." Section 3505.2 provides as follows: "If after a reasonable period of time, representatives of the public agency and the recognized employee organization fail to reach agreement, the public agency and the recognized employee organization or recognized employee organizations together may agree upon the appointment of a

---

[1] All statutory references are to the Government Code unless otherwise indicated.

mediator mutually agreeable to the parties. Costs of mediation shall be divided one-half to the public agency and one-half to the recognized employee organization or recognized employee organizations."

In its fourth cause of action petitioner alleged that, after numerous conferences and meetings between the parties, there remained a number of areas of disagreement, as set forth in the third cause of action; that on June 5, 1969, it formally requested the Board to submit these disputes to third-party mediation and fact-finding, as assertedly provided for by section 3505.2; that the Board arbitrarily and without good cause failed to submit to mediation; and that by virtue of this and related conduct, the Commission and the Board failed to meet and confer in good faith as required by section 3505.

The county filed a return and answer on September 29, 1969, denying the material allegations set forth in the first three causes of action and affirmatively alleging numerous facts relating to the adoption of the salary ordinance. The county asserted that this portion of the petition failed to state a cause of action. In response to the fourth cause of action, the county denied that section 3505.2 provided for fact-finding and denied that the Board had arbitrarily and without good faith refused to submit to mediation. The county alleged that mediation under section 3505.2 was purely discretionary and dependent upon the mutual agreement of the parties. The county alleged that the board's decision not to submit to mediation was a reasonable discretionary act. The county also asserted that this portion of the petition failed to state a cause of action.

In denying the peremptory writ the court made findings of fact and conclusions of law. The court found that the Board had adopted the salary ordinance pursuant to the following procedural process: First, a salary survey, involving approximately 700 classifications, was prepared. All organizations included in the survey were contacted in order to check the comparability of positions with those in Alameda County. Second, in accordance with the requirements of section 3505, there were 11 "meet and confer" sessions with representatives of interested employee organizations, including petitioner. Third, a tentative salary proposal was prepared by the staff of the Commission. Fourth, from April 4, 1969, through May 9, 1969, the Commission held six hearings during which it heard from department heads and from employee organizations, including petitioner. Fifth, the Commission prepared its salary recommendations, and referred them to the Board. Sixth, prior to adopting the ordinance, the Board held six public hearings. The hearings took place from May 6, 1969, through May 29, 1969, and the Board heard from representatives of employee organiza-

tions, including petitioner, representatives of taxpayer organizations and the public.

The court found that the salary rates which were effective July 1, 1969, afforded a salary at least equal to the prevailing salary or wage for the same quality of service rendered to public employers and private persons, firms or corporations under similar employment; that the salary rate increases of 2½ percent, which were effective January 1, 1960, were not required in order to bring salaries into line with the prevailing rates, but rather were enacted pursuant to the Board's power to set salaries at levels in excess of prevailing rates, in order to anticipate possible upward adjustments; that certain classifications which had been questioned by petitioner were warranted by the requirements and duties associated with the classifications, and that persons within these classifications received a salary at least equal to that prevailing for like service in public and private employment; and that on numerous occasions the Board, directly and through its designated representatives, personally met and conferred with representatives of petitioner, freely exchanged information, opinions, and proposals, and endeavored to reach agreement on matters within the scope of representation.

The court's conclusions of law may be summarized as follows: That section 36(e) of the charter obligated the Commission to recommend to the Board a rate of pay based upon a comparison of salaries being paid for like service and working conditions in other comparable places of public and private employment; that the Commission adhered to these standards in formulating its recommendations; that there was substantial evidence before the Commission to support its finding and ascertainment of recommended rates of pay; that the Commission did not act arbitrarily, capriciously, unreasonably, or fraudulently in making its recommendations to the Board; that section 48 of the charter obligated the Board to ascertain the prevailing wage in similar public and private employment for the same quality of service, and then to fix salaries at sums no less than those ascertained; that the Board adhered to these standards in enacting the salary ordinance; that there was substantial evidence before the Board at the time it considered and enacted the salary ordinance to support its finding and ascertainment that the salaries under the ordinance were at least equal to the prevailing rate; that the Board did not act arbitrarily, capriciously, unreasonably, or fraudulently in enacting the ordinance; that because of the differences in the classifications which had been questioned by petitioner there was no requirement that persons employed in these classifications receive similar salaries; that mediation under section 3505.2 is permissive or

discretionary and not mandatory; and that failure to consent to mediation is not evidence of bad faith within the meaning of section 3505.

 On appeal petitioner contends that Alameda County violated the prevailing wage provisions in the charter by dividing the yearly increases into two parts and deferring the second part until January 1, 1970, and that the Board violated the Meyers-Milias-Brown Act (§§ 3500-3511) when it refused, without reasons, to bring its dispute with petitioner to a third-party mediator or fact-finder. The record discloses the following evidence relevant to the issues inherent in these arguments.

The Commission's staff, as in previous years, conducted a salary survey in order to ascertain the wages being paid by private employers and by other public entities for comparable classifications of work. The classifications which were most frequently reflected in the survey were denominated "key classifications." These classifications were viewed as the prime indicator for salary movements in related classifications for which there was less comparable data. With one exception, the survey set forth the salaries which were being paid by other employers as of the time the survey was conducted. The exception pertained to the City and County of San Francisco. At the time the survey was conducted, the San Francisco Board of Supervisors had already adopted a salary ordinance for the fiscal year 1969-1970 and these figures, rather than the figures reflecting current salaries, were set forth in the survey.

The survey segregated the salaries being paid by other public entities, while including the salaries paid by private employers in one figure. Gershenson, petitioner's expert witness, testified that this treatment of the salaries in the private sector was not unreasonable and did not significantly affect the result. He also testified that the fact that the survey did not take into account the varying number of employees in the different public jurisdictions did not make a great deal of difference. After setting forth the salaries being paid by other public entities and by employers in the private sector, the survey indicated the average salary for each key classification. The average was computed by dividing the sum of all the salaries by the number of salaries considered.

The Commission's staff was under the direction of Alfred Nardi who held the position of personnel director. Nardi and his staff were directed by the Commission to meet and confer with the employee groups. Nardi proceeded to meet with employee groups, including petitioner. The information set forth in the salary survey was utilized as the basis for discussions. In the course of these meetings, Nardi informed the employees that al-

though the arithmetic mean was set forth in the salary survey, it was not indicative of a formula used in setting salaries. He explained that the mean was included only because it was a reference point which the Board had gotten accustomed to consulting. Nardi stated that the mean tended to be either too high or too low if there were either extremely high or extremely low figures in the survey. He explained that what was sought was a salary which fell within the middle of the figures in the survey.

After meeting with representatives of employee groups, Nardi submitted his recommendations to the Commission. The document presented included all of the information set forth in the salary survey as well as present and proposed salaries for Alameda County. Attached to the document was a memorandum which stated that the proposals generally matched the maximum position reached by the Board the previous year, and that this meant equating to the prevailing rate by using current figures plus a 2½ percent "lag" adjustment effective January 1, 1970. The memorandum noted that any movement beyond this position would exceed the Board's position of the previous year.[2]

Nardi testified that, in making his recommendations, he attempted to stay within the center area disclosed by the salary survey. He discarded the highest and the lowest figure for each classification. Nardi explained that if there were an uneven number of figures, the center area was between the two middle figures. If there were an even number of figures, the center area was the range between the three central figures. Nardi testified that in making his recommendations he was cognizant of the Board's obligation to fix wages at the prevailing rate. He stated that his recommendations were intended to bring salaries in line with the rates prevailing at the time the salary survey was taken. Gershenson testified that this procedure of selecting a central tendency was not an unreasonable way of arriving at a prevailing rate.

With respect to the 2½ percent "lag" adjustment, Nardi testified that although he knew that salaries would increase in the fiscal year 1969-1970, he did not know by how much and he was not willing to hazard a guess. Nardi gave three reasons for having selected the figure of 2½ percent. First, this was the next increment in the county salary schedule. Second, as the rate of inflation during the preceding year had been 5 percent, a 2½ percent rise could be anticipated in the first six months of the coming fiscal year. Third, the Board had authorized a similar increase the

---

[2]The memorandum recognized that in a few instances special problems required special adjustments and that among these were the nurses.

preceding year and thus it could be anticipated that they would approve the increase. Gershenson testified that although 2½ percent was a conservative figure, it was reasonable.

Nardi gave two reasons for having recommended that the increase be effective January 1, 1970, rather than July 1, 1969. First, the Board had authorized a similar mid-year increase during the preceding year and this seemed to establish a precedent. Second, if the increase were effective July 1, 1969, it would force other jurisdictions to enact a comparable increase. Nardi stated that it was wrong to force other jurisdictions to increase their salaries on the basis of his guess as to what they might in fact do. Gershenson testified that it was unreasonable and not in accord with the custom and practice of labor statisticians to provide that the effective date be deferred until January 1, 1970. Gershenson also stated that if all public jurisdictions chose to ignore salary trends, salaries in the public sector would remain static, except that the private sector might have some influence if salaries fell above the center.

At a meeting held on April 23, 1969, the Commission informed the representatives of employee organizations that they could appear at future meetings and make presentations respecting any disagreements which they had had with the Commission's staff. The representatives of employee groups and the heads of departments appeared at meetings held on April 25, April 30, May 2, and May 9, and expressed their views on the tentative salary proposal.

On May 2, 1969, the Commission referred its recommendations to the Board. With the exception of a few upward revisions, the Commission's recommendations were in accord with the tentative salary schedule which had been proposed by Nardi and the Commission's staff. The Commission recommended that effective July 1, 1969, certain specified classifications were recommended for increases varying from 0 percent increase to a 10 percent increase, and that effective January 1, 1970, 469 classifications were recommended for an additional 2½ percent increase. In its memorandum accompanying its recommendations, the Commission stated that the proposed salaries generally fell in the center of the current rates paid by other bay area agencies and that they generally took into account that some upward salary movement by nearby agencies would probably occur after July 1, thus justifying the January increase.

Nardi presented the recommendations of the Commission to the Board at a meeting held on May 6, 1969. The Board then set the first public hearing on the salary ordinance for May 13, 1969. Public hearings were

conducted on this date and also on May 20, 22 and 27. Representatives of employee organizations as well as other interested persons appeared before the Board and expressed their views.

During these hearings, Nardi was present to serve as a technical adviser. Nardi did not present any independent report, but rather responded only when directly questioned by the Board. In answer to a question, Nardi explained to the Board that the Commission's recommendations were based on the center of the range of figures disclosed by the salary survey.

Nardi testified in the proceedings below that he had not included a technical explanation of the procedures utilized in making the salary survey in the memorandum attached to the Commission's recommendations because he was following a practice utilized by the Board in the past. Nardi testified that he did not provide the Board with any statistical data on salary trends nor did he advise them that all but two of the jurisdictions in the salary survey had salary increases effective July 1.

The Board voted on the various sections of the ordinance on May 27 and May 29. A comparison of the data for each of the 89 key classifications as set forth in the salary survey with the salary rates effective under the ordinance as of July 1, 1969, discloses that the ordinance rates for 76 of the key classes are at or above the central rate of the survey data for the particular class where an odd number of rates were collected for such class, or at or above the range of the central two survey rate figures where an even number of rates were collected for the particular class. There are only 13 instances in which the ordinance rates fall below the central rate, and the ordinance rates for seven of these classes are above the arithmetic mean. The ordinance rates for the remaining five key classifications are within 1 percent of the central rate.

On July 8, 1969, a representative of petitioner appeared before the Board and presented a formal request to submit certain disputes to a third-party mediator and fact-finder. At a meeting held on July 10, 1969, the Board denied the request.

Adverting to the issue presented by this appeal, we observe that petitioner contends that the county violated the prevailing wage provisions contained in the charter by dividing the yearly increase into two parts and deferring the second part until January 1, 1970. It asserts that the effect of this action was to deprive employees of prevailing wages for one-half of the 1969-1970 fiscal year. In response to this argument the county asserts that the prevailing wage provisions did not obligate the Board to predict possible salary movements in other jurisdictions. The county states that the

issue raised by petitioner is, in effect, whether there is substantial evidence to support the trial court's finding that the rates taking effect on July 1 were at least equal to the prevailing wage, and that the increase effective January 1 was not required to bring salaries into line with the prevailing wage, but was enacted by the Board under its power to set salaries at a level in excess of the prevailing rate in order to anticipate possible upward adjustment elsewhere.

As we perceive it, the single issue is whether the salary ordinance is in accord with the provisions of the charter. ■ In resolving this issue we note that courts have declined to fix the prevailing wage at some definite amount as "[i]ts definition is relative to time and place, both of which are within the purview and cognizance of the administrative board in each case." (*Metropolitan Water Dist.* v. *Whitsett*, 215 Cal. 400, 414 [10 P.2d 751].) Similarly, the courts have refused to set forth any specific formula by which the prevailing wage must be determined as this determination may require consideration of various factors such as fringe benefits, hours of work, and productivity which are not easily equated a specific figure. (*Anderson* v. *Board of Supervisors,* 229 Cal.App.2d 796, 799 [40 Cal.Rptr. 541]; *Gowanlock* v. *Turner,* 42 Cal.2d 296, 310 [267 P.2d 310].)

Governing bodies may not, however, adopt any formula which they choose. The courts have generally interpreted the term "prevailing wage" as being synonymous with market value. (*Metropolitan Water Dist.* v. *Whitsett, supra,* 215 Cal. 400, 414-415.) Accordingly, in determining the prevailing wage a governing body may not arbitrarily abandon a previously employed formula in favor of a new formula which involves unfair comparisons and results in denying workers the increase they would have received had the standard formula been utilized. (*Sanders* v. *City of Los Angeles,* 252 Cal.App.2d 488, 492-495 [60 Cal.Rptr. 539].)

■ Section 48 of the Alameda County Charter provides in relevant part that "In fixing compensation, the Board of Supervisors shall in each instance provide a salary or wage at least equal to the prevailing salary or wage, . . . in case such prevailing salary or wage can be ascertained." In order to resolve the issue posed by the instant case it must be determined whether this provision obligates the Board to anticipate increases which may occur in other public jurisdictions and in the private sector during the course of the fiscal year for which they are fixing salaries.

It is first to be observed that this section of the charter begins with the modifying phrase, "in fixing compensation." This suggests that the Board is obligated to afford salaries which are in accord with the salaries pre-

vailing at the time they fix the compensation for the ensuing fiscal year. This interpretation is in accord with the customary usage of the term "prevailing." That word is defined as applying "to what is predominant or widespread beyond others of its kind or class at a time or place indicated, implicit, or assumed to be the present . . . ." (Webster's Third New Internat. Dict.) In sum, "prevailing" refers to the present.

It is next to be noted that this section of the charter concludes with the phrase, "in case such prevailing salary or wage can be ascertained." In construing a similar charter provision, the California Supreme Court defined the word "ascertain" as follows: " 'to fix, to render certain or definite; to establish and determine; to clear of doubt or obscurity . . . to find out by investigation . . . or to hear, to try, and determine.' [Citation.]" (*Walker* v. *County of Los Angeles,* 55 Cal.2d 626, 635 [12 Cal.Rptr. 671, 361 P.2d 247].) It would thus be in derogation of the common meaning of the term used in the Alameda County Charter to find that the Board was obligated to engage in speculation as to what might occur in the future. We therefore conclude that section 48 of the charter does not obligate the Board, in fixing compensation, to anticipate future increases in the rates of pay afforded by other employers.

The fixing of compensation for public employees is a legislative function. (*Banks* v. *Civil Service Commission,* 10 Cal.2d 435, 442 [74 P.2d 741]; *City and County of San Francisco* v. *Boyd,* 22 Cal.2d 685, 689 [140 P.2d 666]; *Carrier* v. *Robbins,* 112 Cal.App.2d 32, 35 [245 P.2d 676]; *Anderson* v. *Board of Supervisors, supra,* 229 Cal.App.2d 796, 798.) However, it is established that prevailing wage provisions constitute a positive limitation on the governing body's discretionary power to determine the rate of compensation. (*Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, 635.) Such provisions are to be liberally construed in favor of the worker. (*Walker* v. *County of Los Angeles, supra,* at pp. 634-635; *Goodrich* v. *City of Fresno,* 74 Cal.App.2d 31, 36 [167 P.2d 784].)

Under provisions such as section 48 of the Alameda County Charter, the Board has a mandatory duty to make a finding as to the prevailing wage. This determination may be made either prior to or at the time the salary ordinance is adopted by the Board. (*Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, 635; *Sanders* v. *City of Los Angeles,* 3 Cal.3d 252, 262 [90 Cal.Rptr. 169, 475 P.2d 201].) After having made this determination, the Board has no discretion to adopt an ordinance which provides for a lesser rate of compensation. (*Sanders* v. *City of Los Angeles, supra,* at p. 262; *Goodrich* v. *City of Fresno, supra,* 74 Cal.App.2d 31, 36.)

■ Our next inquiry, therefore, is whether the charter restricts the Board's discretionary power to afford compensation in *excess* of the prevailing rate and to provide that such additional compensation shall be received only during the second half of the fiscal year.

Section 48 provides that the Board "shall in each instance provide a salary or wage *at least equal* to the prevailing salary or wage, . . ." (Italics added.) The clear import of this language is that the Board retains its discretionary power to fix compensation at a rate which exceeds the prevailing wage. (Cf. *City and County of San Francisco* v. *Boyd, supra,* 22 Cal.2d 685, 690.) There is nothing in the language of this section which suggests that the Board does not retain the discretionary power to determine that the portion of the compensation which is in excess of the prevailing wage shall be received only during the latter half of the fiscal year. Petitioner's contention that a contrary interpretation is mandated by *Walker* and *Sanders* is not tenable. These decisions stand only for the proposition that under a prevailing wage provision there is no discretionary power to provide that compensation which is *equal* to the prevailing wage shall be received only during the latter half of the fiscal year. (*Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, 634-635; *Sanders* v. *City of Los Angeles, supra,* 252 Cal.App.2d 488, 490, 493.)

We therefore conclude that, under section 48 of the charter, the Board retained its discretionary power to afford compensation in excess of the prevailing wage and to provide that such excess be received only during the latter half of the fiscal year.

■ It is thus evident that, in order to comply with the prevailing wage provisions contained in the charter, the Board had to determine the prevailing wage and provide for compensation which was at least equal to the prevailing wage. It is established that courts will not interfere with such action unless it "is fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law." (*City and County of San Francisco* v. *Boyd, supra,* 22 Cal.2d 685, 690; *Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, 639; *Anderson* v. *Board of Supervisors, supra,* 229 Cal.App.2d 796, 798; *Carrier* v. *Robbins, supra,* 112 Cal. App.2d 32, 35.)

■ We are satisfied from a review of the evidence in this case that it substantially supports the findings of the court below and its conclusions that the county did not abuse its discretion in adopting the salary ordinance for the fiscal year 1969-1970 and that it did not violate the prevailing wage provisions set forth in the charter.

Turning to the contention that the Board violated the Meyer-Milias-Brown Act when it refused to agree to mediation, we first observe that the act does not specifically obligate public agencies to bargain collectively with the representatives of employee organizations (§ 3509) but requires that they "shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment" with such representatives. (§ 3505.) The act also provides that if the parties fail to reach agreement within a reasonable time, they "together may agree upon the appointment of a mediator mutually agreeable to the parties." (§ 3505.2.)

Petitioner contends that the county's obligation to meet and confer in good faith includes a duty to specify the reasons for the county's refusal to agree to mediation after an impasse had been reached. It likewise contends that section 3505.2, in providing for permissive mediation, does not give either party the right to unreasonably and arbitrarily refuse to mediate. In effect, petitioner is arguing that an unexplained refusal to agree to mediation constitutes a per se violation of the duty to meet and confer in good faith.

The proper construction of these sections is to be determined by reference to the intent of the Legislature. (*Kimball* v. *County of Santa Clara,* 24 Cal. App.3d 780, 784 [101 Cal.Rptr. 353].) The legislative purpose is disclosed by section 3500 which provides in part that the purpose of the act is "to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." The issue posed is thus whether this purpose can be effectuated only by according sections 3505 and 3505.2 the construction advanced by petitioner.

In resolving this issue we may not ignore the plain language of the statute. (*Kimball* v. *County of Santa Clara, supra,* 24 Cal.App.3d 780, 784.) At the time of the proceedings below, section 3505 provided, in pertinent part, that " 'Meet and confer in good faith' means that a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer in order to exchange freely information, opinion, and proposals, and to endeavor to reach agreement on matters within the scope of representation." The meaning of this language is clear and explicit. As we noted in our previous review of the record, the staff of the Commission met with petitioner's representatives, the Commission afforded petitioner an opportunity to present its views at several meetings, and the Board held meetings at which petitioner's representatives appeared and

offered their opinions on the proposed salary ordinance. There is nothing in the record which suggests that these meetings were a sham. No contention is made by petitioner that the meetings were not conducted in good faith. There is substantial evidence, therefore, to support the finding that the county fulfilled its duty to "meet and confer in good faith."

Adverting to the issue of mediation, we note that section 3505.2 provides that if the parties fail to reach an agreement within a reasonable time they "together *may* agree upon the appointment of a mediator . . . ." (Italics added.) ▮ When the word "may" is used in legislation it is to be given its customary meaning and is to be construed as permissive and conferring discretion unless it appears from the terms of the statute that it was the intent of the Legislature to impose a duty and that the public or third persons have a claim to have the power exercised. (*Kemble* v. *McPhaill,* 128 Cal. 444, 446 [60 P. 1092]; *Roberts* v. *Duffy,* 167 Cal. 629, 638 [140 P. 260]; *Driscoll* v. *East-West Dairymen's Assn.,* 52 Cal.App.2d 468, 472 [126 P.2d 647].) ▮ There is nothing in the instant statute which suggests that "may" is not to be accorded its usual construction.

We conclude, therefore, that there is a duty to "meet and confer in good faith," but there is no duty to agree to mediation. If the requirement of meeting and conferring in good faith is met it is not unreasonable for either of the parties to refuse to submit the matter to mediation. There is no requirement in the statutes, moreover, that reasons be specified for the refusal to mediate. In sum, if the parties meet and confer in good faith they do all that is required of them by the statutes. Mediation is merely an option granted to the parties in the endeavor to reach an agreement if both parties are so disposed. We apprehend that since the agreement to mediate is subject to mutual agreement, no duty to mediate is imposed upon the employees as well. They too, in a particular instance, may feel that mediation is not the desirable approach to the resolution of the differences.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 25, 1973.